[Civ. No. 609. First Appellate District.—January 6, 1910.]

SHEPHERD-TEAGUE COMPANY, a Corporation, Respondent, v. J. S. HERMANN, Appellant.

BROKERS' COMMISSIONS—EXCHANGE OF REAL ESTATE—POWER OF PARTIES—USUAL CONTRACT.—Where a contract for broker's commissions for procuring an exchange of real estate provided for an agreed commission on the value of the property to be exchanged, "in the event this exchange is made," which was modified in view of the known fact that the broker was also acting for the other party, by fixing a different commission, "in the event the trade is con-

summated," while the parties had the power so to word their contract as to make it clear that the parties intended that no commissions should be paid, except upon a completed sale resulting in the execution and acceptance of deeds of transfer; yet such a contract is not the usual one between the seller and his agent or broker, and it is held that this is not the meaning of the contract in question.

ID.—GENERAL RULE—MEANING AND EFFECT OF BROKER'S CONTRACT.— Within the meaning of a broker's contract to sell real estate, a sale or exchange is made when the broker has procured a responsible purchaser, or one acceptable to the seller, or has brought the seller and buyer together, and they have in consequence entered into such contract, or such buyer, being able, ready and willing to buy on the seller's terms, offers so to do.

ID.—CONSTRUCTION OF MODIFIED CONTRACT—CONSUMMATION OF TRADE. The language of the modified contract for commissions to be paid, "in the event the trade is consummated," must be interpreted in the light of the purposes and objects of the contract, which was to change the amount of the commissions in view of a known fact, which might lead to a binding offer from the other party; and when this should be accomplished by plaintiff, it would have consummated the trade within the meaning of the modified contract. It was the only consummation of the trade within the power of the broker. The consummation by exchange of deeds required the further act of defendant, over which plaintiff had no control.

ID.—UNSUSTAINABLE DEFENSE — KNOWN COMMISSION RECEIVED FROM EXCHANGING PARTY.—The defendant cannot sustain a defense on the ground that the broker had received a commission from the exchanging party, where it appears that that fact was fully known, and that the modified contract was based upon it.

ID.—EXCHANGE NOT EFFECTED — BURDEN OF PROOF UPON BROKER.— Where no exchange was effected, the burden of proof is upon the broker to show that he found one who was ready, willing and able to effect the exchange on the terms proposed, or that he brought the parties together so that his vendor might have secured the exchange, if desired. On no other terms can he recover from his vendor.

ID.—FAILURE OF EVIDENCE—FINDINGS UNSUPPORTED.—Where the purchaser was nonresident, and the evidence fails to disclose any such binding offer from him, as would have enabled the defendant, if his title was perfect, to compel the exchange, on the terms proposed, findings to the contrary are unsupported by the evidence.

ID.—RESPONDENT NOT HELPED BY INCONSISTENT DEFENSES.—The respondent is not helped by the fact that in a separate and further

defense, defendant set up an affirmative defense predicated upon his construction of the terms of the contract with the plaintiff, inconsistent with his denials in the first defense. Denials in one defense are not affected or qualified by inconsistent affirmative matter in another and separate defense.

APPEAL from an order of the Superior Court of Fresno County, denying a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Everts & Ewing, for Appellant.

F. H. Short, and F. E. Cook, for Respondent.

HALL, J.—Plaintiff recovered a judgment against defendant for the sum of $1,500, commission claimed to have been earned under a written contract of employment to find a purchaser for and negotiate a sale and transfer of certain real property for defendant. This is an appeal from the order denying defendant's motion for a new trial.

Defendant in his answer admitted that he executed a written agreement in favor of the plaintiff, by which the defendant agreed to pay to the plaintiff a commission of $1,500, "provided that the said plaintiff should consummate a sale of certain property therein named and set forth," upon the terms in said writing set forth, but denied performance of the contract upon the part of plaintiff, and any indebtedness from defendant to plaintiff under said contract.

Defendant attacks the sufficiency of the evidence to support the findings in favor of plaintiff.

The first contention of appellant involves the construction of the contract under which plaintiff claims that it has earned the commission sued for.

The contract relied on is in two instruments executed by defendant to plaintiff. By the first—which by its terms was to expire in ten days from June 13, 1905, defendant promised to exchange certain property of his, subject to a mortgage for $40,000, for a piece of property known as the home place of A. B. Butler, and contained the provision that: "In the event this exchange is made, I agree to pay to Shepherd-Teague Company a commission of two and one-half per cent upon the value of my property."

The second instrument, dated June 24, 1905, was an extension and modification of the first as to the terms upon which defendant would exchange properties, and also contained this provision: "That said agreement is also modified by this extension to the effect that in the event the trade is consummated, the commission that I was to pay therefor to the said Shepherd-Teague Company shall be $1,500 instead of the commission therein set forth."

No exchange of properties between defendant and Butler has ever taken place. The trade was never consummated by any exchange of deeds, and defendant for this reason contends that under the contract plaintiff is not entitled to his commission.

Of course parties to a broker's contract for the sale of real estate may make the payment of commissions dependent upon any lawful condition, and such contract might be so worded as to make it clear that the parties intended that no commissions were to be paid except upon a completed sale resulting in the execution and acceptance of deeds of transfer. Such a contract, however, is not the usual one between the seller and his agent or broker. We do not think it is the meaning of the one now under consideration. In the first writing the commission was to be paid "in the event this exchange is made." Within the meaning of a broker's contract to sell real estate, a sale or an exchange is made when the broker has procured from a responsible purchaser, or one acceptable to the seller, a binding and valid contract for a sale or exchange on the terms proposed by the seller, or has brought the seller and buyer together, and they have in consequence entered into such a contract, or such buyer, being able, ready and willing to buy on the seller's terms, offers so to do. (*Phelps* v. *Prusch,* 83 Cal. 627, [23 Pac. 1111].)

The language of the second writing that "in the event the trade is consummated, the commission that I was to pay therefor to the said Shepherd-Teague Company shall be $1,500 instead of the commission therein set forth," lends somewhat stronger support to appellant's contention. But this language must be interpreted in the light of the purposes and objects of the contract. The record shows that before the date of the second writing defendant had learned that plaintiff was acting for Butler also, and was to receive a

commission from him. This circumstance as well as the verbiage of the commission clause in the second writing shows that the primary purpose and object sought thereby was to change the amount of the commission to be paid, rather than the event upon which it was to be paid. Defendant at this time was anxious, or at least willing, to exchange certain property of his for certain property belonging to Mr. Butler. The Butler property was for sale, and certain negotiations had been carried on through plaintiff between defendant and Butler prior to the execution of the second writing, but which had not resulted in any meeting of the minds of the principals. A trade was under consideration, but had not been agreed upon. The purpose of employing plaintiff was to effect a trade, to secure from Butler a valid and binding acceptance of the offer of defendant. When this should be accomplished by plaintiff it would have consummated the trade, we think, within the meaning of the contract sued upon. It was the only consummation of the trade within the power of the broker. The consummation by exchange of deeds required the further act of defendant, over which plaintiff had no control.

The second and most important contention of appellant is that, conceding the interpretation of the contract to be as contended for by respondent, the evidence fails to show that plaintiff has performed the same.

In this case the exchange was never actually consummated between defendant and Butler. Under these circumstances it is incumbent on the broker "to prove that he found a purchaser ready, willing and able to buy the property on the terms fixed, and either that he procured from that person a valid contract binding him to purchase the property upon those terms, or that he brought the vendor and the proposed purchaser together so that the vendor might have secured such contract if he desired. On no other terms can he recover." (*Mattingly* v. *Pennie,* 105 Cal. 514, [45 Am. St. Rep. 87, 39 Pac. 200]; *Gunn* v. *Bank of California,* 99 Cal. 349, [33 Pac. 1105].)

Plaintiff never brought Butler to defendant. Butler was not within the state of California. Plaintiff relied upon a contract that it procured. This contract was not signed by Butler personally, but was signed thus, "A. B. Butler by J.

J. Miley.'' It was also signed by defendant, and efforts were made to carry out the contract, but defendant's title to a portion of his property was defective, and the trade fell through.

It is urged that the contract for the exchange of the properties is not shown to have been a valid contract binding upon Butler, and therefore its procurement was not a sufficient performance by plaintiff to entitle it to recover.

Miley was the manager of the Butler property, a vineyard, but had no power of attorney to sell real estate. The agreement signed by defendant and Miley is dated June 30, 1905. It was admitted in evidence, over the objection of defendant, that it was not shown to have been executed by Butler. The only evidence of any authority for Miley to execute any contract for the sale or exchange of the Butler property is that contained in certain telegrams from Butler.

For the better understanding of these it is necessary to state that the first writing executed by defendant to plaintiff, under date June 13, 1905, contained an offer to exchange defendant's equity over a $40,000 mortgage in property known as ''The Fresno Loan and Savings Bank Building'' for the home place of A. B. Butler, consisting of one hundred and twenty acres of land and improvements. No other property is referred to in the first writing.

The first telegram from Butler is addressed to Wendell Easton, who was co-operating with plaintiff, and is dated June 17, 1905, and is as follows: ''Replying yours 16, I will exchange 120 a. for bank building and $10,000, payable in three years secured by mortgage at 5 per cent clear. A. B. Butler.'' This was simply a counter offer at most, and was not accepted by defendant.

The next telegram is dated June 21, 1905, and is: ''If Hermann will pay $8,000 in five years, 5 per cent close. No other proposition to make. A. B. Butler.'' This was not accepted by defendant.

June 22, 1905, Easton wired Butler: ''Hermann offers instead of $8,000 five years 8 lots and improvements in Fresno, monthly rental $200. Advise you telegraph. Miley appraise it for you.''

To this letter Butler replied to Easton: ''I prefer paper to property. Wire some definite proposition through Miley.''

On this day, June 24, 1905, the extension and modification of defendant's offer to plaintiff was executed. In this writing defendant offered to exchange the bank property, subject to the $40,000, and eight lots in the city of Fresno for the Butler one hundred and twenty acres, "together with all the personal property, including trays, sweat-boxes, farming utensils, horses or mules with their harness, which has heretofore been used upon" the Butler home place.

On June 29th Miley wired to Butler: "Have closed deal subject your confirmation allowing Hermann eight thousand trays now you to get rents from July first which more than offsets trays. Easton-Teague will take half interest of Chinatown property for four thousand at your option. A good trade. Answer immediately."

On June 30, 1905, Butler wired to Miley: "Commission on $50,000 was for $10,000 mortgage. Close if you cannot do better."

Upon the receipt of this telegram Miley signed the contract for Butler.

The most that can be claimed for these telegrams is that they authorized Miley to agree for Butler to an exchange of Butler's one hundred and twenty-acre home place and eight thousand trays for Hermann's bank building property and the eight lots.

The authorization from defendant to plaintiff required the transfer to him of all the personal property used upon the Butler place, and the contract signed by Miley and defendant likewise required the transfer to defendant of such property, consisting of four mules, harness, a wagon and various farming implements and vehicles, all of which are enumerated therein. We look in vain through the telegrams and the record for any authorization from Butler to Miley or anyone else to bind him to make such transfer. Up to the time he sent the last wire ending, "Close if you can do no better," he had been informed of a proposition from defendant to exchange the bank building property and eight lots in Fresno for the one hundred and twenty-acre Butler home place and eight thousand trays, and nothing else. This is the most that it can be claimed that Butler had agreed to give for the property offered by defendant. The contract signed by

Miley agreed for much more, and does not appear by this record to have been authorized by Butler.

Neither can it be said that because defendant, after his attorney had examined the telegrams, upon his advice, signed the agreement with Miley for the exchange, and took steps thereafter to carry out this agreement, defendant accepted such contract as a full performance by plaintiff of its contract to consummate the trade. Defendant had the right to proceed in the effort to consummate the trade in the expectation that it could and would be completed by an exchange of deeds, in which case plaintiff would have earned its commissions.

In this respect the case at bar is analogous to the case of *Gunn* v. *Bank of California*, 99 Cal. 349, [33 Pac. 1105], where the broker took a deposit of $500 from the buyer, upon an oral agreement to purchase. The broker reported the sale, and the seller approved the same in writing, but its title proved defective, and the purchaser refused to complete the purchase for this reason only. It was held the broker could not recover his commissions.

Apparently for the purpose of showing a ratification by Butler of the agreement signed by Miley, of date June 30, 1905, Miley testified that he sent a copy of the agreement to Butler, and further testified: "I received a deed in reply. I must have received a letter, but I don't know where it is. The deed was to property described in the agreement. I have got the deed in my pocket." This letter does not appear to have ever been delivered or shown to defendant. The deed was not introduced, though in the pocket of the witness, and what it contained is only shown to the extent that it was "to property described in the agreement." The witness did not even say that it was to *the* property described in the agreement. It may well have been to property described in the agreement, and yet not to all the property therein described. This evidence does not disclose such a state of facts as would have enabled defendant to enforce specific performance of the contract of June 30, 1905. Where no sale has been actually consummated, and the broker has not brought the buyer and seller together, it is his duty "to procure a valid contract to purchase, which can be enforced by the

vendor if his title is perfect.'' (*Gunn* v. *Bank of California,* 99 Cal. 349, [33 Pac. 1105].) Plaintiff in the case at bar accomplished neither of these things, and for that reason the findings on which the judgment is predicated are not supported by the evidence.

Respondent is not helped by the fact that in a separate and further defense defendant set up an affirmative defense predicated upon his construction of the terms of his contract with plaintiff, inconsistent with his denials in his first defense. Denials in one defense are not affected or qualified by inconsistent affirmative matter in another and separate defense. (*Banta* v. *Siller,* 121 Cal. 414, [53 Pac. 935]; *Buhne* v. *Corbett,* 43 Cal. 264; *Miles* v. *Woodward,* 115 Cal. 308, [46 Pac. 1076]; Code Civ. Proc., sec. 441.)

For the purposes of a retrial it is proper to say that we do not think the defense founded upon the fact that plaintiff was also employed by Butler, and was to receive a commission from him, can be maintained upon the record before us. It clearly appears that when defendant executed the agreement with plaintiff dated June 24, 1905, he knew these facts. The commission was reduced to $1,500 for this reason. The cases relied upon by appellant upon this point are both cases where the seller was ignorant of the fact that the broker acted for and received pay from the buyer.

The order is reversed.

Kerrigan, J., concurred.

COOPER, P. J.—I concur in the judgment, but in my opinion the exchange of the property and the consummation of such exchange was a condition precedent, upon which the right to the commission depended. It was not proven that there was any exchange of the properties, nor was the exchange consummated. The contract signed by Miley was not binding upon Butler.

As to what is said in the last paragraph of the opinion, I think a broker who is acting as agent for one of the parties and receiving a commission from such party, should not be allowed to collect a commission from the other party for the same services unless it clearly appears that the broker fully and fairly stated all the facts to such other party. The law

does not countenance double dealing; and there is a strong presumption in such case that one cannot at the same time serve two masters; but of course if the two masters both know all the facts, and, knowing such facts, each agrees to pay a certain sum, there is nothing unfair about such contract. In this case the defendant must have been fully informed as to all the facts, and as to the amount of commission that the plaintiff was to be paid by Butler before plaintiff can recover against him.