[Civ. No. 1038. Third Appellate District.—June 23, 1913.]

## R. L. EDWARDS, Respondent, v. REUEL A. LAIRD, Appellant.

BROKERS—PRODUCING PURCHASER OF REAL ESTATE—COMMISSIONS.—A real estate broker does not produce a purchaser ready, able, and willing to purchase, so as to be entitled to commissions, if the would-be purchaser does not sign an agreement to purchase, and his identity is unknown to the vendor until suit is brought by the broker for commissions.

ID.—PERFORMANCE OF SERVICES—TIME LIMITED IN CONTRACT.—To entitle a real estate broker to his commissions, his services must be performed within the time specified in the contract.

ID.—DURATION OF BROKER'S CONTRACT—MEANING OF "IN ANY EVENT."—The expression in a real estate broker's contract with his principal that the agreement is "to be maintained in any event until the 28th day of September," means that whatever may happen the agreement shall be maintained until that date. The phrase in any event does not extend the time prescribed beyond the day named.

ID.—ESTOPPEL OF PRINCIPAL TO DENY LIABILITY FOR BROKER'S COMMISSIONS.—A broker cannot assert that his principal is estopped to deny liability for his services, when he has already completed the services at the time of the principal's conduct complained of, and such conduct consists of an oral promise as to a matter within the statute of frauds.

ID.—RATIFICATION BY PRINCIPAL—ACCEPTANCE OF BENEFITS.—A principal does not ratify a contract made by a broker with a prospective purchaser of land, if he does not accept the benefits of the contract.

ID.—RATIFICATION OF BROKER'S CONTRACT MUST BE IN WRITING.—Since a broker's contract to sell land must be in writing to justify the recovery of his commission, a ratification of his contract of sale by the principal must be written.

APPEAL from a judgment of the Superior Court of Modoc County and from an order refusing a new trial. Clarence A. Raker, Judge.

The facts are stated in the opinion of the court.

R. A. Laird, and C. S. Baldwin, for Appellant.

A. F. Shartel, for Respondent.

BURNETT, J.—Plaintiff recovered judgment for eight hundred dollars as a broker's commission for the sale of real property. The contract upon which plaintiff relied was in writing, dated July 19, 1911, and therein defendant agreed that "the price of said land is hereby fixed at $2,600.00, twenty-six hundred dollars; and when a purchaser shall be produced, ready and willing to purchase said tract, or when a sale is effected at the price above named, I agree to furnish a merchantable title to said tract, free and clear of all encumbrances, and to furnish abstract of title showing the same; and to pay the said R. L. Edwards the sum of one hundred dollars as commission for such advertising and sale, and in the event that said property shall be sold for a sum in excess of the price above indicated, said R. L. Edwards shall receive all of such excess. This agreement to be maintained in any event until the 28th day of September, 1911." Plaintiff claims to have secured a purchaser on the thirty-first day of October, 1911, who was able, ready, and willing to purchase said land for the sum of three thousand three hundred dollars. Hence, his contention that he was entitled to the sum of eight hundred dollars, composed of the two items, one hundred dollars and the difference between three thousand three hundred dollars and two thousand six hundred dollars.

There was no actual sale of the property and it is entirely clear, we think, that, under the authorities as applied to the evidence, respondent did not secure a purchaser and his authority as broker did not extend to October 31, 1911.

As to what is meant by finding a purchaser, it is sufficient to refer to the leading case of *Gunn* v. *Bank of California*. 99 Cal. 349, [33 Pac. 1105], wherein it is held that the broker does not find a purchaser within the meaning of the rule "if

the purchaser does not sign a binding agreement to purchase, or is not produced before the vendor as a person ready and willing to enter into such a contract, and who offers to complete it provided the vendor will make the conveyance.''

It appears, without conflict, that the would-be purchaser here did not sign any agreement to purchase and, furthermore, that he was not produced at all before the vendor. In fact, the latter had no information of his identity until this suit was brought. The plaintiff himself testified that he did not tell defendant how much he had sold the place for and; in response to the question, ''Did you tell him to whom you had sold the place?'' he replied: ''I told him a man in Oakland; I don't remember if I used the name.''

It cannot be said, therefore, in contemplation of law, that plaintiff obtained a purchaser who was ready, able, and willing to purchase. In this aspect of the case plaintiff seemingly did not earn the commission provided for in the written authority. (See, also, *Mattingly* v. *Pennie,* 105 Cal. 514, [45 Am. St. Rep. 87, 39 Pac. 200] ; *Logan* v. *McMullen,* 4 Cal. App. 154, [87 Pac. 285] ; *Mott* v. *Minor,* 11 Cal. App. 774, [106 Pac. 244] ; *Shepherd–Teague Co.* v. *Hermann,* 12 Cal. App. 394, [107 Pac. 622].)

It is equally well established that the services must be performed within the time specified in the contract to entitle the broker to his commission. (*Zeimer* v. *Antisell,* 75 Cal. 509, [17 Pac. 642] ; *Hicks* v. *Post,* 154 Cal. 22, [96 Pac. 878].) In the latter case it was said: ''The rule that time is not of the essence of a contract unless it is expressly so declared therein has no application to a contract under which a broker is given a certain time within which to make a sale. The broker must perform the duty assumed by him within the time limited by the contract, otherwise he has no right to compensation.''

As to this point the only possible contention arises from the use of the phrase *in any event.* Omitting this expression, the language of the contract would be: ''This agreement shall be maintained until the 28th day of September, 1911.'' In that contingency it would, of course, not be doubted that said September 28 would be the last day on which the broker would have any authority, under the contract, to make a sale. This time is not extended by the use of the phrase in question. *In any event* means ''no matter what else may be'' or

"whatever may happen." The agreement, then, is substantially this: "Whatever may happen, this agreement shall be maintained until the 28th day of September, 1911." Any one at all familiar with the ordinary use of the English language need not be told that when parties stipulate that an agreement shall be maintained *until* a certain date they necessarily imply that said date fixes the limit of said agreement and that it shall not continue beyond that date. That this was the intention of the parties is emphasized by the fact that before the agreement was signed they struck out these words: "and in no case thereafter will it be deemed canceled, but shall remain in full force until I have given said R. L. Edwards ten days' notice in writing of such cancellation." If they had desired to continue the agreement beyond said date of September 28th and make it terminable on notice it seems strange that they did not so provide. But as indicating a contrary intention that no option was to be given they deliberately excluded the clause which would have extended the authority beyond September 28th.

We find no ground upon which the conclusion of the trial court can be maintained. We particularly discover no basis for the application of estoppel or ratification.

After plaintiff had made the "deal" with the prospective purchaser on October 31st, we have the following account by plaintiff of what occurred: "I went and hunted Mr. Laird up and I found him at the dance hall: I told him I had made the deal; he said that was all right. I had a contract of sale with me to sign, showing the sale had been made and I spoke to him about signing it. He said his mother would have to sign it and said he would rather wait until morning. I made the remark that we could not very well wait—that the purchaser was ready to take the land, and was ready to pay over the money or part of it. I said: 'Would it be all right, if you cannot sign this up to-night, would it be all right for me to take the money and receipt for it?' He said: 'It will be all right; we will sign the contract tomorrow.' I realized it would take some little time to get the abstract and there was a minor heir so it would have to go through the court." It appears that appellant never did sign the proffered "contract of sale" as one of the owners was unwilling to sell for less than three thousand dollars.

22 Cal. App.—26

It may be said that appellant gives a somewhat different ac-
count of the said conversation with respondent, but, giving
full faith to the latter's testimony, what does it signify?
There are several reasons why the doctrine of estoppel does
not apply. It is sufficient to say that the substance of es-
toppel is the principal's inducement to another to act to his
prejudice. The agent had already completed his services.
He was not led by anything said in this conversation to change
his position or act in any way to his prejudice. Besides, the
broker had no legal right to rely upon any oral promise of
the owner in reference to the sale of the land. If the owner
had expressly promised to pay the commission, unless in
writing, it would not furnish the basis for an action. Es-
toppel cannot be grounded upon an illegal promise. "The
fact that acting under an invalid agreement, he (the broker)
made efforts to find purchasers, cannot, of course, operate to
prevent the other party from asserting the invalidity of the
contract. To hold the contrary would be to abrogate the
statute of frauds. (*Shanklin* v. *Hall,* 100 Cal. 26 [34 Pac.
636]; *Dolan* v. *O'Toole,* 129 Cal. 488, [62 Pac. 92].)"
(*Hicks* v. *Post,* 154 Cal. 22, [96 Pac. 878].)

It cannot be said that appellant ratified the so-called con-
tract made with the prospective purchaser for the reason that
appellant did not accept the benefits of the contract. It may
be that he intended to do so and thus expressed himself but,
for the reason already indicated, he could not make a deed.

There is another reason that stands in the way of this con-
tention of respondent. Since the agent's authority must be
in writing to justify the recovery of the commission, to reach
the same result the ratification would also have to be in
writing. "Wherever the law requires a particular mode of
authorization there can be no valid ratification except in the
same manner. . . . If, however, the original authority
must have been given in writing the ratification to be valid
must also be in writing." (31 Cyc. 1264.) There is no pre-
tense, however, that there was any written ratification and the
only legal authorization of the sale expired long before there
were any negotiations with the would-be purchaser.

We find nothing in the cases cited by respondent to sus-
tain him in his position here.

In *Phelps* v. *Prusch,* 83 Cal. 627, [23 Pac. 1111], there was no question but that the broker produced a purchaser ready to buy on the terms proposed and it was through the fault of the owner that the sale was not consummated. The distinguishing features of the case are set forth in *Gunn* v. *Bank of California,* 99 Cal. 349, [33 Pac. 1105], wherein it is said: "In that case the judgment really turned upon the fact that the vendor himself prevented a consummation of the sale. He was informed of all that the brokers did in the matter of making the sale, and knew who the purchaser was and after being thus fully informed acquiesced in what they had done, but afterward became dissatisfied and exerted himself to and succeeded in preventing the sale."

Of course, before he can claim his commission or successfully urge the default of the owner the broker must produce the purchaser. In the instant case he failed in that respect and this would be fatal to his cause of action regardless of the owner's averseness to the execution of the deed or of the time limit in said contract of agency.

In *Clark* v. *Dalziel,* 3 Cal. App. 121, [84 Pac. 429], the contract of agency provided that it should remain in force for the full period of ten days and *"thereafter until withdrawn by me in writing."* The property was never withdrawn from sale, in writing or otherwise, and since the agreement between the broker and owner provided that the former should recover his commission if the sale were made by him or by the owner, and a sale having been made by the owner, the court very properly held that the commission was due the broker.

The case of *Bacon* v. *Davis,* 9 Cal, App. 83, [98 Pac. 71], has no application here. It was there decided that, owing to the peculiar language of the instrument of agency, the contract of sale executed by the agent was binding upon the owner and imposed upon him the obligation to make the conveyance. We have before us simply the ordinary broker's contract involving entirely different questions from those arising in the Bacon case.

We think the judgment and order should be reversed and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 22, 1913.