[Civ. No. 7551. Second Appellate District, Division One.—May 24, 1933.]

C. A. EDGECOMB, Appellant, v. H. S. CALLAHAN, Respondent.

Russell H. Pray for Appellant.

Louis N. Whealton and Raymond J. Kirkpatrick for Respondent.

DESMOND, J., *pro tem.*—Plaintiff claimed the sum of $8,750 was due him as commission earned in connection with a transaction involving certain real estate belonging to the defendant in the city of Long Beach. From a judgment in favor of defendant this appeal is prosecuted.

The appellant, a regularly authorized real estate broker, on April 12, 1929, secured from respondent a letter reading as follows:

"April 12, 1929.

"Mr. C. A. Edgecomb, Long Beach, California.

"Dear Sir:

"After our conversation yesterday, in regard to the leasing of my West Ocean property, described as lots one to eight, inclusive, Park View Tract, Long Beach City, California.

"Should you find a party financially responsible; I will enter into a lease for my above described property, on the following terms; $2000. per month net for a period of twenty-five years.

"At the expiration of the twenty-five year lease, the lessee becomes owner of the above described property by deed, put in trust, when lease is signed.

"In the event the lessee desires to build before the expiration of his lease, and to assist him in financing if it should become necessary, I will deliver deed before expiration of this twenty-five year lease, for building purpose only and in deeding the property before expiration of the lease, does not change the terms of said lease, as to the amount of monthly payment or length of time to run. Lessor to be secured by bonds or property before turning over deed to property.

"The insurance to be prorated when the lease is signed, and I will refund all deposits now up on lease that have not expired.

"I will pay you a commission on the basis we talked about, that $8750. is to be the full amount paid when the lease is signed, payable $500 per month.

"I believe this brings out the necessary high spots for your people to shoot at, as a preliminary outline to work from.

"~~You may have ten days from date to negotiate this lease.~~

"Hoping you success, I remain

"Yours very truly,

"H. S. CALLAHAN."

A copy of this letter was attached as Exhibit A, to appellant's complaint.

On April 20, 1929, according to the evidence, the following instrument was signed by prospective lessees procured by appellant:

"We, the undersigned, B. D. Marx and I. Chudnow, hereby accept the proffer and agreement for a lease made

by H. S. Callahan to his agent, C. A. Edgecomb on the 12th day of April, 1929, and a copy of which is hereto attached.

"This is intended as a notice to H. S. Callahan of the acceptance of his said proposition for a twenty-five year lease on the premises described as: Lots One (1) to Eight (8) inclusive, Park View Tract, Long Beach, California, at a rental of Two Thousand Dollars ($2,000.00) per month for a period of twenty-five years, the undersigned acceptors and lessees to become the owner of the above described property at the expiration of said twenty-five year lease. Dated this 20 day of April, 1929. I. Chudnow B. D. Marx."

Within the ten days originally mentioned in the letter of April 12, 1929, notice of the "acceptance" by Messrs. Chudnow and Marx was served on respondent by registered mail, by telegram and by means of a paper left at his office.

No lease was ever executed between the parties, although it appeared that on April 29, 1929, appellant brought them together. At that conference, according to appellant's testimony the respondent "said he would not go through with the deal, thought he had a better deal, he thought he had a better deal made, something to that effect". Respondent also "said he would not go through with any deal unless he was properly secured, if he had to turn that deed over before that lease expired". Shortly thereafter Messrs. Chudnow and Marx signed a release in favor of respondent "so that he could lease the second floor of his building", the attorney for respondent being instructed by him at that time to draft a lease of his premises between himself and Chudnow and Marx, which was done, but the lease was never signed by respondent or by the prospective lessees.

The appellant was the first and only witness called in this case, for when he had proceeded to the point reached in the foregoing recital the trial judge stated that he would entertain an objection to the introduction of any further evidence. This objection accordingly was made by respondent's counsel on the ground, as stated, that the letter of April 12, 1929, "shows that it was the intention that a lease be prepared and that the listing in and of itself was not an offer to make a lease". Counsel for appellant offered to show that Chudnow and Marx went to a bank prepared

to sign the lease which had been prepared by respondent's attorneys, but that upon arriving there respondent declined to sign "because $10,000, not provided for in the lease, was not given to him". It appears from affidavits filed by Chudnow and Marx in support of a motion for a new trial (which seems never to have been formally made or determined) that if they had been permitted to testify they would have sworn that on April 29, 1929, when they conferred with respondent he refused to execute a lease on the terms proposed in his letter to appellant, and which they were willing to sign, the respondent demanding that a bond be posted, then saying that a bond could not be obtained in such a matter; that later the parties agreed upon the terms of a lease which was approved by all concerned and for which an escrow was opened with the Farmers & Merchants Bank of Long Beach providing that $10,000 should be deposited by Chudnow and Marx in said escrow to be paid to respondent upon his signing said lease, that they were ready to sign the lease and pay the $10,000 into escrow, but that respondent being present at the bank then refused to sign the lease unless the $10,000 were paid to him directly instead of through escrow as previously agreed, that they, on their part refused to pay the money directly to respondent, who thereupon left the bank without signing the lease; that they were ready, willing and able at all times to sign the lease which had been prepared; that their offer to enter into the lease was made in good faith; that, at the time of making the affidavit they were financially responsible to enter into and execute the contemplated lease.

In the discussion that ensued upon the court's suggesting that an objection to the introduction of further testimony be made, counsel for appellant insisted upon his right to proceed with his witnesses calling attention particularly to his second cause of action based upon a *quantum meruit*. In response to that contention the trial court stated: "*Quantum meruit* does not arise under this sort of contract if I understand it correctly. The pleadings themselves raise the questions of law without any evidence whatever in connection with it. . . . If there had been a demurrer filed to the complaint I would have sustained it,— if there had been an objection interposed to the introduction of any evidence to the effect that the complaint did

not state a cause of action I would have sustained the objection. Now we have the unqualified statement of the plaintiff himself as to Exhibit A. Judgment for defendant.''

If this transaction had involved a lease upon real property, not a sale or exchange, an action for services rendered might have been based upon an oral agreement (*Guy* v. *Brennan*, 60 Cal. App. 452 [213 Pac. 265]), and in such a state of facts suit in *quantum meruit* is proper. (*Nave* v. *Taugher*, 49 Cal. App. 308, 310 [193 Pac. 508]; see, also, *Brown* v. *Crown Gold Milling Co.*, 150 Cal. 376, 382 [89 Pac. 86].)

However, examination of the letter of April 12th, which is replete with references to a lease discloses nevertheless that the owner contemplated, as part of the deal, placing a deed to the premises in trust, title to pass at expiration of the twenty-five year term or earlier, if necessary for building purposes. No additional payment above the ''$2,000 per month for a period of twenty-five years'' was called for. This payment referred to as in the above quotation marks and again in the same letter as a ''monthly payment'' is not called rent, but even if it had been, we should still construe the transaction as a contemplated conditional sale and not a lease under the authority of *McCollough* v. *Home Ins. Co.*, 155 Cal. 659 [102 Pac. 814, 18 Ann. Cas. 862].

Since an action to recover commission for services rendered in effecting a sale of real estate must be based upon a written contract under the statute of frauds, Code of Civil Procedure, section 1973, subdivision 5, it follows that the court was right in ruling that a suit in *quantum meruit* would not lie. ''A broker cannot recover for his services in buying or selling real estate upon a *quantum meruit* where his contract was not in writing, when that is required by the statute in relation to brokers.'' (17 A. L. R. 891, citing *McCarthy* v. *Loupe*, 62 Cal. 299, and various other California cases.)

We do not overlook the fact that appellant was prepared to prove that at a date subsequent to April 29th the parties agreed upon the terms of a lease which may or may not have contained an agreement to transfer title; however, in this action the common count refers to services rendered

between April 12th and April 20th and the offered proof therefore would not sustain the action in *quantum meruit*.

Having determined that the transactions referred to in these pleadings involved not a lease but a contemplated conditional sale, we must consider the letter of April 12th as the groundwork of the action and pass upon appellant's contention that the court's ruling which barred him from producing further evidence deprived him of his day in court. To determine the merit of this contention we turn, as did the trial court to the letter of April 12th, noting first its closing words: "I believe this brings out the necessary high spots for your people to shoot at, as a preliminary outline to work from."

In our opinion this language clearly imports a reservation in the seller of the right to work out with the buyers final details of the transfer acceptable to both parties. We are strengthened in this belief when we consider the nature of the transaction, involving as it did the contemplated transfer of title after the lapse of twenty-five years or earlier under certain conditions, payments aggregating $600,000, permitting construction of new buildings upon premises in the business center of Long Beach, furnishing possible means of financing such construction and requiring security therefor. No provision is made in the letter for payment of taxes or assessments, for providing insurance in any amount or determining the use or disposition of money that might be secured in case of loss, for conditions upon which default might be declared or manner or time of notice to remedy a claimed default. These are only a few of the important details that the owner of property of this character has a right to pass upon before parting with possession or contracting to deliver title, and this defendant inferentially but undeniably asserted that right in himself when he stated at the close of his letter that the high spots therein constituted but a preliminary outline to work from. It may be noted that the letter speaks of security to be posted, "bonds or property before turning over deed to property". Here is one high spot, in itself so indefinite and uncertain as to require for the protection of both parties a further agreement fixing the amount and nature of the security. Concluding, as we must, that the defendant reserved the right to negotiate further with any prospective lessees or pur-

chasers whom the plaintiff might bring to him we now are called upon to decide whether the court was justified in terminating this trial as soon as he heard from the plaintiff that no lease was actually signed. In this connection the following language appearing in the letter of April 12th commands our attention: "I will pay you a commission on the basis we talked about, that $8,750 is to be the full amount paid when the lease is signed, payable $500 per month."

It seems to us that here is a condition, under which the broker accepted this employment, that no commission would be due unless a lease (or selling agreement) was actually signed. ■ While it is a fact that an owner who agrees to pay a commission when a sale is made may not bar his broker from recovering the amount earned by merely refusing to convey to a purchaser who has been procured by the broker and who is ready, willing and able to perform (*Carlin* v. *Lifur,* 2 Cal. App. 590 [84 Pac. 292]), it can hardly be gainsaid that owner and broker may, if they wish, enter into a binding agreement that no commission shall be considered as earned until the happening of a certain specified event. (See *Shepherd-Teague Co.* v. *Hermann,* 12 Cal. App. 394, at p. 397 [107 Pac. 622].) Evidently the trial court concluded that there was such an agreement in this case, and feeling that no useful purpose would be served by taking additional testimony when it became apparent that no lease was signed, decided to terminate the hearing forthwith.

■ The appellant claims that various findings made by the trial court are unsupported by the evidence. We agree, but the findings that are not so supported relate to matters that are quite immaterial in view of the conclusion reached by the court that no commission was due because no lease was executed.

A clerical error appears in the findings as well as in the conclusions of law in this record where the letter of April 12, 1929, is referred to as plaintiff's exhibit 1, instead of exhibit 2, its proper designation. Having this necessary correction in mind we observe that there are sufficient findings supported by the evidence to warrant the conclusions drawn by the court and to sustain the judgment. "It is indisputable that if there are unobjectionable findings

256

which amply support the judgment, findings on other issues become immaterial, and the fact that they are contrary to the evidence is not ground for reversal." (24 Cal. Jur., p. 993, citing many cases.)

Judgment affirmed.

Houser, Acting P. J., and York, J., concurred.