[Civ. No. 18791. Second Dist., Div. Three. Aug. 5, 1952.]

## A. F. HODGES, Appellant, v. RAYMOND LEWIS, Respondent.

Jerome T. Stewart for Appellant.

Pearlson & Pearlson for Respondent.

WOOD (Parker), J.—Action to recover $10,000 for services rendered as a real estate broker. Judgment was for defendant, and plaintiff appeals therefrom.

On October 28, 1949, the defendant and Safeway Stores, Incorporated, entered into a written agreement entitled "Sales Deposit Receipt," which recited that defendant had received $100 from Safeway Stores as a deposit on and part payment for certain real property (described therein), the purchase price of which was $170,000 cash and one lot and 50 feet of another lot. It recited further that an escrow would be

opened and that the buyer (Safeway Stores), within 15 days after receipt of notice from the escrow holder that it was in a position to close escrow, would deposit "the balance of said purchase price in said escrow." Other recitals in the agreement were as follows:

"6. Seller agrees to pay a real estate brokerage commission in the amount Agreed upon outside of escrow ($ ) Dollars to A. F. Hodges, Broker A-F-H. in connection with the completion of the sale escrow.

"7. That this receipt form constitutes the full agreement between the parties hereto and shall be paramount to and supersede any variances, conflicts or omissions contained in any subsequent escrow instructions which may be prepared by an escrow officer and signed by the parties hereto.

"8. The escrow herein provided for shall be completed on or before Thirty (30) days from date hereof, or on or before such extended period as the Buyer may grant."

On the same day, October 28th, the defendant signed escrow instructions and delivered them to an escrow holder. The escrow holder sent a copy of the instructions to Safeway Stores but Safeway Stores did not sign the instructions. (The escrow instructions were not offered or received in evidence.) The manager of the real estate department of Safeway Stores, who was called as a witness by plaintiff, testified that the instructions provided in part that "Before November 28, 1949, Safeway Stores, Incorporated, will hand you the sum of $169,000.00."

On October 31, 1949, plaintiff (broker) and defendant entered into a written agreement entitled "Commission Agreement," which was as follows:

"In consideration of the efforts of A. F. HODGES to negotiate the sale of the property controlled by the undersigned, located at the Northeast corner of Vermont Avenue and Third Street, Los Angeles, California, containing approximately 87,955 sqft. of area, to Safeway Stores, Incorporated, a Maryland Corporation, I hereby agree to give to him *upon final consummation of said sale* an option to purchase Lot 428 and the Easterly 50 feet of Lot 430 of Ford's Temple Street Addition, in the City of Los Angeles [said lots being a part of the purchase price of the property involved here] . . . at a price of Five Thousand ($5,000.00) Dollars to and including Apr. 1st, 1950. Price to be cash." (Italics added.)

In November, 1949, according to the testimony of plaintiff, the defendant told plaintiff that he was having difficulty in

clearing his title. The escrow officer testified that there were several liens and encumbrances on the property; that on December 13, 1949, defendant delivered documents to him, or authorized use of funds to pay for documents, which were sufficient to clear the title, and at that time defendant told him that he wanted to cancel the escrow. Defendant cancelled the escrow on said December 13, 1949. Safeway was not notified by the escrow holder that it was in a position to close escrow. On said December 13th the escrow holder notified Safeway that the escrow had been cancelled. On December 16, 1949, Safeway "put up the money" and "deposited" it in the escrow. Prior to the time defendant cancelled the escrow he had been informed by another real estate broker that said broker had a buyer who wished to purchase the property here involved (the property at 3rd and Vermont). Defendant sold the property to that buyer about December 14, 1949.

Appellant contends that when a broker produces a buyer who is ready, able and willing to purchase property on the seller's terms, the broker has earned his commission and cannot be deprived of it by the seller's refusal to consummate the sale.

 The right of a broker to recover commission must be measured primarily by the terms of his employment. (*Peterson* v. *Montgomery Holding Co.*, 89 Cal.App.2d 890, 894 [202 P.2d 365]; *Ford* v. *Palisades Corp.*, 101 Cal.App.2d 491, 498 [225 P.2d 545]; see also *Denbo* v. *Weston Inv. Co.*, *ante*, pp. 153, 157 [245 P.2d 650].) As above shown, it was specifically provided in the commission agreement that, in consideration of plaintiff's efforts to negotiate the sale of the property to Safeway Stores, the defendant would give to plaintiff "upon final consummation of said sale" an option to purchase certain real property. It therefore appears that plaintiff's right to receive the option was contingent upon the happening of a certain event, namely, the final consummation of the sale. An owner and a broker "may, if they wish, enter into a binding agreement that no commission shall be considered as earned until the happening of a certain specified event." (*Edgecomb* v. *Callahan*, 132 Cal.App. 248, 255 [22 P.2d 521].) In the case just cited, wherein the owner agreed to pay a commission "when the lease is signed," the court held that the commission was not earned since the lease was not signed. It was stated in *Peterson* v. *Montgomery Holding Co.*, *supra*, at page 894, that

"When a condition precedent is adopted by contracting parties in their agreement, the court will exact a substantial if not a strict observance of the provisions of the agreement before ordering a judgment thereon." The agreement in the present case was not to secure a purchaser in the open market, but it was to negotiate a sale to a designated purchaser. In *McGill v. Fleming*, 32 Cal.App.2d 601 [90 P.2d 341], the defendant employed plaintiff's firm to secure leases on defendant's property from the Great Atlantic and Pacific Tea Company, and defendant agreed to pay the brokers a commission for "consummating" the leases. The court therein held that the parties contemplated the payment of the brokers' commissions only upon the effective consummation of the leases, and it stated at page 604: "We are not unmindful of the general rule that a broker earns his commission when he has secured an acceptable lessee for the lessor, one who is ready, able and willing to lease the property upon the terms on which the broker is authorized to negotiate the lease. The present case, however, is not the ordinary one in which a broker is employed to secure a lessee in the open market. In this case the prospective lessee was named in the form of lease which had been prepared and also in the agreement sued upon. In this agreement the lessor became bound to pay the commission 'for consummating' the transaction. The right of the broker to recover commissions must of course depend upon the terms of his employment. The word 'consummate' means to bring to completion." In the present case the sale was not consummated. As above shown, the agreement between Safeway and defendant recited that the escrow "shall be completed on or before" 30 days from the date of said agreement (October 28, 1949), or "on or before such extended time as the Buyer may grant." The time limited in that agreement was not extended by Safeway. Under the provisions of said agreement, the time for completing the escrow expired on November 28, 1949. Defendant did not agree to give the option to plaintiff, or to pay him a commission, if he (defendant) was unable to consummate the sale in 30 days. Of course, defendant could not give plaintiff an option to buy the lots until the defendant had acquired them upon consummation of the sale of defendant's property. Under the circumstances here, the defendant would have become bound to compensate plaintiff only upon "final consummation" of the sale, unless the failure to consummate the sale was due to the bad faith of

defendant. (See *Ford* v. *Palisades Corp., supra,* p. 497; and *Peterson* v. *Montgomery Holding Co., supra,* p. 894.) There was no evidence that the failure to consummate the sale was due to bad faith on the part of defendant.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.