[Civ. No. 6384. Fourth Dist. Jan. 18, 1961.]

GRAHAM C. DEXTER, Appellant, v. MRS. AUSTIN G. McMANUS, Respondent.

Crooks & Gunter for Appellant.

Thompson & Colegate for Respondent.

GRIFFIN, P. J.—Plaintiff-appellant, a licensed real estate broker, brought this action to recover a real estate commission. The complaint sets forth three separate causes of action. One alleged an oral agreement by defendant employing plaintiff to secure a lessee for unimproved real property at Palm Springs; another was a common count for services rendered; and a third was for reasonable value of services performed; all in the sum of $26,050.27. Attached to the complaint as an exhibit is a document or memorandum dated April 30, 1957 reciting:

"To: Mrs. Austin G. McManus, Lessor, and
          Mr. William Tackett, Lessee

"SUBJECT: Preliminary Agreement for Leasing [description of plaintiff's property]

"Lease Term: 60 years

"Rental: 7% a year on valuation . . .

"Lessee to pay 1st years rent in advance.

"Rent to start December 1, 1957

"Re-consideration and re-valuation of lease terms after a period of 25 years.

"Inflation Clause: Lessee *suggests* payment of 15% of Gross rentals, compared to rent, whichever is greater . . .

"Taxes: Lessee to assume taxes on property . . .

"Note: Lessee to deposit $75,000.00 in escrow account as form of security. *when lease is signed.*

"Approved: Pearl M. McManus, Lessor

"Approved: William C. Tackett, Lessee" (Italics ours.)

The complaint alleges in paragraph 5 that pursuant to the oral agreement plaintiff negotiated for the leasing of said premises and plaintiff procured a lessee suitable to defendant, ready, willing and able to lease the property on the conditions set forth. Defendant denied generally these allegations, except she admits that she and one Tackett did sign the written memorandum, but she denies that it was intended to, or did, constitute a final agreement between defendant and Tackett.

At the trial, plaintiff testified that in January 1957 he had a conversation with defendant, who had lived in Palm Springs for 74 years, in which she said plaintiff was free to work on a

piece of property owned by her and she hoped he could put a deal together on it and that plaintiff's commission would be computed on the basis of the commission schedule of the Palm Springs Real Estate Board; that defendant wanted assurance that there would be a definite lease; that thereafter he gave the name of Tackett to defendant and about January 1, 1957, he discussed with Tackett the possibility of leasing defendant's property on several occasions; that prior to April 30, 1957, defendant, Tackett and plaintiff discussed this property and defendant and Tackett agreed that the term of the lease would be 60 years; agreed to the price of rental; that Tackett would put up $75,000 in escrow as security and that rent would start December 1, 1957; that Tackett explained the type of building he would build on the property; that plaintiff made notes on the above document which were introduced in evidence and that he gave copies to defendant and Tackett for their approval; that he told defendant he would transcribe the notes for her signature and defendant then said to Tackett "We certainly made Graham [plaintiff] earn his commission on this deal . . ."; that thereafter certain changes were made in the document by each party and each initialed the changes; that thereafter defendant suggested that Tackett contact her attorney in reference to drawing a formal lease; that she discussed plaintiff's commission but said another agent had an exclusive on her major properties and this agent should be notified of the situation; that defendant later said she had contacted this agent and he would not expect any commission on this transaction; that plaintiff computed his commission based on the agreement signed and the commission schedule of the Palm Springs Real Estate Board.

Plaintiff read into evidence portions of a deposition of defendant wherein she testified plaintiff told her he had somebody interested in leasing the property; that she signed a "preliminary agreement" with Tackett; that Tackett and plaintiff were to take it to her attorney to "work out the details" and "work out an agreement." It was stipulated that a formal lease was never executed. The evidence as to the reason for failure to execute the formal lease was that plaintiff told Tackett in February 1957 that J. W. Robinson Company was going to build a store on the opposite corner and that Tackett had stated at that time that he would have to revise his thinking about tenants; that in April he was told by Tackett that the latter had communicated with prospective tenants in the East; that just two days prior to the memorandum of April 30, 1957, which plaintiff asserts is the basis

for his commission claim, Tackett had stated that since he had learned the Robinson store was going in on the opposite corner, he had had to revise his whole thinking in regard to tenants, and he had telephoned to New York and Chicago to acquire tenants who would "fit right in with the picture" and he also had to revise his whole thinking about the inner structure of his building. It appears that about the middle of February plaintiff broker wrote the defendant a letter in which he mentioned the leasing of this property and he sent a copy to defendant's attorney because plaintiff felt the attorney "should be informed" of these initial negotiations. It appears that on April 24, 1957, plaintiff attended a Palm Springs City Council meeting with the defendant's attorney in connection with a proposed setback on the Robinson store which was to be built on the property across the street from defendant's property and that plaintiff did this because he felt that anything that was done to the Robinson property would affect the property in which he was interested. Plaintiff confirmed the testimony appearing in her deposition, to the effect that at the close of the April 28, 1957 meeting, Mrs. McManus said she felt this was a very equitable and agreeable lease, and she was going to ask her attorney to draw the lease; that Tackett told Mrs. McManus that he would be very glad to work with her attorney, that it wasn't necessary to bring his attorney, and he wanted to work directly with her attorney.

It appears that on May 2, Tackett was insisting that an additional condition be placed in the lease to the effect that unless he was assured that the Robinson lease was an accomplished fact and unless the Robinson store was built across the street, there would be no lease between him and Mrs. McManus. Plaintiff attempted to prevail on defendant to accede to this request but she refused and insisted that Tackett go ahead with his building. She made Tackett a counteroffer (drawn up by plaintiff) to purchase plaintiff's building after he built it, if the Robinson store was not built, and Tackett refused this offer. There was no time mentioned in the preliminary agreement as to when Tackett was to start constructing his building, and this also became an issue in drafting the final lease. A question also arose as to when the rent would start and was payable, and defendant wanted to be "assured there would be a definite lease." Plaintiff was informed of these facts. Apparently the whole transaction fell through when Tackett insisted that there be a clause conditioning his

lease upon the Robinson lease and the construction of the Robinson building. Defendant refused to include such a provision in the lease and insisted that the Tackett lease stand on the provisions previously negotiated. Subsequently Tackett died before the commencement of this action.

After hearing this evidence, the trial court granted a motion for nonsuit and a judgment of dismissal followed. This appeal is from this judgment.

Plaintiff now argues that he was entitled to his commission because he procured a lessee ready, willing and able to lease the property upon the terms fixed and brought the parties together, thus enabling the lessor to secure a contract had she so desired. (Citing *Leckey* v. *Holst*, 97 Cal.App. 698 [275 P. 1015]; 9 Cal.Jur.2d, § 82, p. 246; *Woodbridge Realty* v. *Plymouth Dev. Corp.*, 130 Cal.App.2d 270 [278 P.2d 713]; *W. Ross Campbell Co.* v. *Peskin*, 162 Cal.App.2d 225 [328 P.2d 27]; and *Mack* v. *Gavello*, 85 Cal.App. 355 [259 P. 359].)

It is argued, under these authorities, that the seller, by refusing to go further in the way of formalizing the concensus, could not defeat plaintiff's right to be paid for his services, since the signed memorandum constituted a binding integrated contract in itself and the trial court erred in granting a nonsuit.

Defendant concedes the rules cited by plaintiff in reference to this court's review of a judgment of dismissal entered after granting a motion for nonsuit, as stated in 16 Cal.Jur.2d 208-211, section 45, and cases there cited, but argues that giving plaintiff's evidence all the value to which it is legally entitled, it is lacking and insufficient for at least two reasons, namely: (a) that the broker's compensation was dependent upon the terms of the contract, which was that he was to secure a lease; and (b) not only did the broker fail to secure a lease, he did not even procure a prospective lessee ready, willing and able to enter into a lease agreement.

From plaintiff's evidence, it well appears that the execution of the formal lease to be prepared by defendant's attorney was the lease to be obtained under the preliminary agreement and that plaintiff never produced a prospect ready, willing and able to sign a binding written agreement between the owner and the prospect. (See *Edgecomb* v. *Callahan*, 132 Cal.App. 248 [22 P.2d 521].)

There are many decisions in this state to the effect that though a broker may produce a prospect ready, willing and

able, even though a binding written agreement is executed between the owner and the prospect, nevertheless, where the terms of the broker's employment make his right to commissions depend upon consummation of a sale or lease or a final closing of an escrow or execution of a final agreement, he is not entitled to commissions unless the requirement is met. In *Edgecomb* v. *Callahan, supra,* the broker sued for commissions which were to be paid "when the lease is signed." In that case, there had been a written listing, and a written acceptance thereof was secured from two prospective purchasers, which acceptance was in accordance with the listing. The broker brought the parties together, but no agreement was ever executed, although one was drawn up by counsel for the owner. The written memorandum there is not unlike the one here. The court there said, at page 254:

"In our opinion this language clearly imports a reservation in the seller of the right to work out with the buyers final details of the transfer acceptable to both parties." (See also *Leventritt* v. *Cowell,* 21 Cal.App. 597 [132 P. 627] ; *Cochran* v. *Ellsworth,* 126 Cal.App.2d 429 [272 P.2d 904] ; *Hodges* v. *Lewis,* 112 Cal.App.2d 526 [246 P.2d 676].)

It is apparent that the preliminary agreement is incomplete in several respects. It makes no provision in reference to insurance, for conditions upon which default might be declared, and it does not state when the lease shall commence. It does provide the amount of guaranteed minimum rentals for the first 25 years but does not state when these minimum rentals shall be paid for the remaining 35 years of the lease. It *suggests* reconsideration and reexamination of these terms after 25 years and *suggests* 15 per cent gross of rentals compared to rent, whichever is greater. Many other provisions are lacking or are indefinite. Lack of these definite provisions was held to be fatal in *Edgecomb* v. *Callahan, supra,* 132 Cal. App. 248. (See also *Ridgway* v. *Chase,* 122 Cal.App.2d 840 [265 P.2d 603].) The cases relied upon by plaintiff are not factually similar. In the instant case, there was no unqualified legally binding agreement to lease. Plaintiff himself referred to it as "Preliminary Agreement for Leasing" and it was nothing more. (*Edwards* v. *Billow,* 31 Cal.2d 350 [188 P.2d 748].)

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.