[Civ. No. 20628.   Second Dist., Div. Three.   Aug. 1, 1955.]

A. R. FILANTE, Respondent, v. RALPH E. KIKENDALL, SR., Appellant.

Samuel J. Silverman for Appellant.

Boller, Suttner & Boller for Respondent.

WOOD (Parker), J.—Action to recover $3,700 allegedly due as real estate broker's commission. Judgment was in favor of plaintiff, and defendant appeals therefrom.

On March 4, 1952, defendant and his wife owned a one-half interest, as joint tenants, in a motel in Monterey Park. Their son, Ralph E. Kikendall, Jr. (hereinafter referred to as Ralph), and his wife owned a one-half interest therein, as joint tenants. On said date defendant signed a "listing" which provided, in part, that plaintiff had the right, for the period from March 4, 1952, to May 4, 1952, to sell said motel for $110,000; that the down payment was to be $35,000; and that if a sale "is effected" by plaintiff during the agency, defendant agreed to pay plaintiff as commission 5 per cent on

$50,000 of the selling price and 2 per cent on the balance of the selling price. At the bottom of said listing plaintiff wrote the following words: "No sale after May 1, 1952." Plaintiff testified that he wrote those words at the request of defendant who told him, after he had given him the listing, that he wanted the motel sold by the first of May, and that if it was not sold by that time he was going to keep it.

About April 1, 1952, defendant went to Illinois and did not return until April 26, 1952. Plaintiff advertised the property for sale. Jacob Tenenbaum (erroneously referred to as Tannebaum) read the advertisement, went to plaintiff's office and talked with an associate of plaintiff, Homer Smith (who testified that he was a real estate broker during the year 1952). According to the testimony of Tenenbaum and plaintiff, Tenenbaum went to plaintiff's office about the middle of April. According to the testimony of Smith, Tenenbaum went to plaintiff's office on April 23. On the day Tenenbaum went to plaintiff's office, Smith took Mr. and Mrs. Tenenbaum to the motel, and a caretaker at the motel "showed" them around. Tenenbaum told the caretaker that he wanted to see the books. The caretaker telephoned Ralph who said that he would show the books to Tenenbaum. That afternoon Ralph met Tenenbaum in the motel office and showed the books to him. Tenenbaum testified that he "offered" Ralph $100,000 for the motel and everything that was in it; that Ralph said he could not make the deal without defendant's consent; that Ralph in his (Tenenbaum's) presence, telephoned defendant (who was in Illinois), and then told Tenenbaum that it was "O.K." Defendant testified that said telephone conversation was on April 17, 1952; that in the conversation he and Ralph "agreed" that Tenenbaum could have the motel for $100,000 if defendant could keep "certain things"; and that he told Ralph to convey that message to Tenenbaum. The following day Ralph called Smith and told him that Tenenbaum had offered $100,000 for the motel. While returning from the motel to his home, Tenenbaum saw that a freeway was under construction in the vicinity of the motel. The next day he went to plaintiff's office and told Smith that he was "scared of that freeway," and didn't think he would buy the motel. About two days later Tenenbaum went to Detroit. About 18 days later he returned to California. He apparently did not tell Smith or defendant that he was going away, but he gave Smith the address of the apartment house in Los Angeles where he resided.

Defendant testified that on April 28 he telephoned plaintiff, at his home, and asked what had happened to the Tenenbaums; plaintiff replied that he had been sick and that he would have Smith work on it.

Mrs. Filante, wife of plaintiff, testified that on May 4 defendant telephoned her home and asked to speak to plaintiff; she replied that plaintiff was ill; defendant said that he was anxious to sell the motel, that plaintiff had a prospect who was very interested in it, and that he (defendant) wished that plaintiff would get Smith "to work on that."

Smith testified that on May 3, 1952, Ralph telephoned him, asked him what had happened to Tenenbaum, and stated that he thought Tenenbaum was a hot prospect; he also told Smith to "Get busy on him" and "We want to close this deal and get it over with"; Smith went to Tenenbaum's apartment in Los Angeles and the manager told Smith that Tenenbaum was out of town and might not be back for two weeks; Smith left a note, with the manager, for Tenenbaum in which he asked Tenenbaum to come to his office; on May 22, 1952, Mr. and Mrs. Tenenbaum went to plaintiff's office where Smith had a conversation with them about the motel; they talked about the freeway and whether it would hurt the business; Tenenbaum "wanted to investigate" the matter; Smith told them that he thought that the freeway would not hurt the business because Garvey Boulevard (on which the motel was located) would always carry a heavy load of traffic; Tenenbaum said that he was not convinced; on May 22 he (Smith) went to the motel and told defendant that he and plaintiff had worked hard on the motel and were still working to make a deal with Tenenbaum; he asked defendant for another listing; defendant replied that he would have to see his son, "But in the meantime you go ahead and work on it"; thereafter, Smith went to see Tenenbaum, and Tenenbaum told him that he liked the motel and that he was going to buy it.

Tenenbaum went to the motel and offered $98,000 for it. On May 23 defendant and his wife, and Ralph and his wife, as sellers, and Tennenbaum and his wife, as buyers, executed escrow instructions for the sale and purchase of the motel for $98,000. The buyers paid $30,000 into escrow at that time. The escrow was completed on June 9, 1952.

The findings were, in part, as follows: Plaintiff and Smith were licensed real estate brokers. Defendant and his wife were owners as joint tenants of an undivided one-half of the

motel; and Ralph and his wife were owners as joint tenants of one-half of the motel. On March 4, 1952, defendant made and delivered to plaintiff an agreement in writing whereby defendant employed plaintiff to obtain a purchaser for the motel during the period from March 4 to May 4, 1952, and thereafter in respect to parties with whom plaintiff negotiated during said period, provided plaintiff notified defendant in writing of said negotiations. Said agreement contained the words "No sale after May 1," which were inserted at the request of defendant. Between March 4 and May 1 plaintiff advertised the motel and showed it to the Tenenbaums. As the result thereof the Tenenbaums during April, 1952, orally offered to purchase the motel for $100,000, and defendant orally agreed to accept it. Thereafter in April the Tenenbaums became concerned about the possible effect that a proposed freeway might have upon the motel business. About May 3, Ralph requested Smith to hurry and sign up the Tenenbaums. On May 4 defendant requested plaintiff to keep working on the Tenenbaums. On May 21 defendant told Smith that he would not sign a new listing but to keep working on the Tenenbaums. On May 22 plaintiff discussed the proposed freeway with the Tenenbaums and assured them that it would not harm the business. On May 23 an escrow was opened between said owners, as sellers, and the Tenenbaums, as buyers, for the sum of $98,000,—$30,000 cash and the balance by note and trust deed. On May 29 Tenenbaum demanded and received from defendant a written agreement whereby defendant agreed to protect Tenenbaum in case any broker demanded a commission. Ralph was the partner of defendant and was authorized to act, and did act, between March 4 and May 29, 1952, as the agent of defendant for the purpose of negotiating with plaintiff and with prospective buyers and for the purpose of waiving terms and agreeing upon extensions of plaintiff's listing agreement. Defendant orally waived any time limit expressed in plaintiff's written listing agreement during which plaintiff could obtain the Tenenbaums as purchasers of the motel. Said listing agreement by its own terms covered any sale made to persons who had seen the motel prior to May 1, provided plaintiff had notified defendant in writing of their names; on May 23, 1952, plaintiff notified defendant in writing that he had negotiated with the Tenenbaums between March 4 and May 1, 1952.

Appellant contends that the evidence was insufficient to support the judgment. He argues that no purchaser was

procured by plaintiff during the term of the listing at the price asked by appellant, and therefore plaintiff cannot recover a commission. He also argues that plaintiff was not the procuring cause of Tenenbaum's buying the property—that Tenenbaum prevailed upon appellant to accept $98,000 for the motel, after plaintiff's listing had expired. ■ A provision in a real estate listing agreement limiting the time for performance by the agent may be waived orally by the principal; and whether or not there has been a waiver depends upon the facts and circumstances of the particular case. (*Baker* v. *Curtis*, 105 Cal.App.2d 663, 669 [234 P.2d 153] ; see *Augustine* v. *Trucco*, 124 Cal.App.2d 229, 239 [268 P.2d 780].) ■ In the Baker case just cited, it was said at page 669: "[T]he time limitation stated in such a contract [real estate listing] may be waived and where, as here, the owner, after the time limit provided in the contract had expired, urged and encouraged the broker to continue his efforts to find a purchaser for the property, and the broker did so continue with the knowledge, approval and encouragement of the owner, and, as a result of the broker's efforts, a purchaser to whom the owner sold the property was produced, under such circumstances the time limit in the written contract must be considered as having been waived and the broker is entitled to his commission." In the present case, as above stated, the court found that on May 4 and May 21 defendant told Smith to keep working on the Tenenbaums; that on May 3 Ralph requested Smith to hurry and sign up the Tenenbaums; that Ralph was a partner of defendant and was authorized to act for defendant for the purpose of waiving terms and agreeing upon extensions of plaintiff's listing agreement; that defendant orally waived any time limit in the listing agreement during which plaintiff could obtain the Tenenbaums as purchasers. The evidence with respect to the subject matter of those findings having been stated above in some detail, it is not necessary to review that evidence here. The evidence supports said findings. Also, the evidence shows that plaintiff and Smith performed services, as requested by defendant, after the expiration of the time limit provided in the listing, and that such services continued until approximately the time the escrow was opened. In April, before the time limit expired, plaintiff procured the Tenenbaums as prospective purchasers who orally offered $100,000 for the motel; and also in April defendant orally accepted the offer. Later in April, however, the Tenenbaums became concerned as to

whether the proposed freeway would affect the motel business, and they did not then proceed further with the transaction. After the expiration of the time limit, Smith discussed the freeway matter, and other matters pertaining to the motel, with the Tenenbaums. Plaintiff was the procuring cause of the sale to the Tenenbaums. It is true that the motel was not sold for $110,000, the price stated in the listing agreement; however, the owner by accepting $98,000 could not thereby deprive plaintiff of a commission. ██ In *Palmtag* v. *Danielson*, 30 Cal.2d 517 [183 P.2d 265], it was said at page 521: "Ordinarily, the price at which a broker is authorized to sell property is considered merely an asking price to guide the broker in his negotiations with prospective purchasers. . . . If the broker procures a purchaser willing to pay a lower price, the owner cannot deprive the broker of his commission by conducting the final negotiations himself and selling at a lower figure to the purchaser procured by the broker." The evidence supports the judgment.

██ Appellant also contends that the finding that Smith was a duly licensed real estate broker is not supported by the evidence. He argues that the only evidence is that Smith was a real estate broker during 1952; and that there was no evidence that he was licensed. This contention is without merit. Section 10015 of the Business and Professions Code states: " 'Real Estate Broker' refers to a person licensed as a broker under Chapter 3 of this part." Smith testified that he was a real estate broker during the year 1952. It was alleged in the fourth amended complaint that Smith was a duly licensed real estate agent at all times therein mentioned. At the trial, appellant did not make a point of the failure of Smith to use the word "licensed" in stating his occupation.

██ Appellant also contends that the finding to the effect that Ralph was authorized to act as defendant's agent in waiving the time limitation was not supported by the evidence. He argues that since land was involved, such an authorization must be in writing, and there was no evidence that he had such a writing. As above stated, defendant could waive such time orally. It was not necessary that Ralph, his agent, have a written authorization to represent defendant in doing that which the defendant could do orally. In any event, the evidence shows that defendant, personally, waived the provision as to the time limit.

██ Appellant also contends that the fourth amended complaint did not state a cause of action, and that the court erred

in overruling his demurrer. His principal argument with respect to this contention is that said complaint does not allege that plaintiff procured a purchaser within the time specified in the listing. That complaint alleged that "defendants waived any time limit contained in" the listing. Of course, in view of such an allegation, it would be inappropriate to also allege that a purchaser was procured within the time limit. His other argument with respect to said complaint is to the effect that it is not alleged that plaintiff procured a purchaser ready, willing, and able to purchase under the terms of the listing. The matter of the owner selling for an amount less than that stated in the listing has been discussed above. The demurrer was properly overruled.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.