[Civ. No. 21907. Second Dist., Div. One. Nov. 26, 1956.]

ENNIS COTTON, Respondent, v. JEWELL THEATRE CORPORATION (a Corporation) et al., Defendants; MARK HANSEN, Appellant.

Milton M. Cohen and Patti Sacks Karger for Appellant.

Borah & Borah for Respondent.

WHITE, P. J.—Plaintiff instituted this action against defendant corporation and Mark Hansen to recover a real estate commission in the sum of $10,000, allegedly due plaintiff as a real estate broker. A sales agreement had been executed between plaintiff's client and defendant Jewell Theatre Corporation by Mark Hansen, its president. The sale itself was never consummated, and at the time of trial defendant corporation still owned the property. A second

cause of action was included in the complaint against defendant Mark Hansen alone, alleging that the sale was not consummated by reason of defendant Hansen's lack of authority to bind defendant corporation, and was founded on a claimed breach of warranty of authority on the part of defendant Hansen to act for the corporation. The trial court found that defendant Hansen lacked corporate authority so that plaintiff could not recover upon his first cause of action against either defendant; that on the second cause of action plaintiff was damaged because of defendant Hansen's breach of warranty of authority, in the amount of $8,600. From a judgment against defendant Mark Hansen in such sum on the second cause of action, defendant Hansen prosecutes this appeal.

Concerning the factual background surrounding this litigation, the following is conceded to be a correct epitome thereof. Plaintiff Ennis Cotton is and was a licensed real estate broker at all times in which the matters pertaining to this action transpired.

The defendant Jewell Theatre Corporation is and was a California corporation during the same period.

The defendant Jewell Theatre Corporation at all times was the owner of a parcel of real estate which was the subject of the dealings between the parties to this action.

Said real property was substantially all of the assets of the Jewell Theatre Corporation.

Defendant Mark Hansen executed a number of documents involving the real property owned by Jewell Theatre Corporation; such documents were signed by Mark Hansen as president of the Jewell Theatre Corporation.

The defendant Mark Hansen at all times during the transactions was the president of defendant Jewell Theatre Corporation.

A Mr. Harold Herond was present with Hansen and plaintiff throughout most of the negotiations and transactions. Herond was a 25 per cent stockholder in defendant Jewell Theatre Corporation. However, Mr. Herond died prior to the trial of this action and, therefore, was unavailable as a witness.

On February 18, 1954, plaintiff called at Hansen's office and wrote up an exclusive listing card which defendant Hansen signed as follows: "Jewell Theatre Inc., Mark Hansen President." Said card listed the property at a price of $175,000.

Thereafter plaintiff presented three written offers to defendant Hansen, none of which were accepted. The said offers were: Offer of plaintiff dated March 8, 1954, to purchase the property for the sum of $165,000 with $5,000 cash as down payment; offer executed by plaintiff's client, Irving Smith, dated April 1, 1954, wherein said Smith offered to purchase the property for the sum of $160,000 with $15,000 cash down; offer executed by plaintiff's client Irving Smith, dated April 7, 1954, wherein Smith offered to purchase the property for the sum of $165,000 with $15,000 cash down.

When the last offer was rejected, plaintiff requested that Hansen sign a document for plaintiff to take back to Smith as a counteroffer.

Plaintiff wrote up the offer dated April 12, 1954, which was signed "Jewel Theatre Corporation, Mark Hansen."

Said document (Exhibit 6) contained, among other things, the following language and provisions:

"(a) Purchase price of $172,000.00.

"(b) Broker shall be credited with $10,000.00 in and through this escrow which shall be broker's commission. . . .

"(c) An escrow shall be opened at any branch of Security-First National Bank within 8 days.

"(d) That the property is sold subject to approval of owner and this offer is effective and irrevocable on my part until April 15, 1954, at 6 p.m. to enable agent herein to procure owner's approval.

"(e) Time is the essence of this contract.

"(f) I agree to sell the above described property on the terms and conditions herein stated and agree to pay the above named broker as commission the sum of 5% or one-half the deposit in case same is forfeited by purchaser, provided the same does not exceed the full amount of the commission."

Thereafter, and on the evening of April 12, 1954, at about 6 or 7 p. m., the prospective purchaser, Irving Smith, signed the document.

No consent of the Board of Directors of Jewell Theatre Corporation, and no approval of the principal terms of the transaction embodied in the aforesaid Exhibit Number 6 by vote or written consent of the shareholders entitled to exercise a majority of the voting power of the corporation was obtained; no meeting of the stockholders was held nor was consent of the stockholders obtained for that purpose, either

before or after the execution of the aforesaid agreement designated as Exhibit Number 6.

Defendant Hansen represented that he had authority to sell the said property and pay a commission for said sale, which authority he did not have. Hansen was sincere in his representations, and believed that as president he had the authority. Hansen believed he could and would get the necessary authority.

On April 23, 1954, plaintiff, defendant Hansen, Mr. Harold Herond, now deceased (who was a stockholder of defendant corporation), and the prospective purchaser, Irving Smith, went to the Security-First National Bank, Larchmont Avenue Branch, to open an escrow relative to the prospective sale of the property in accordance with Exhibit Number 6, at which place they met with the escrow officer of said bank.

At the escrow, an argument developed between plaintiff and defendant Hansen relative to the manner in which plaintiff's commission was to be paid. Plaintiff contended that the language of the agreement, "Broker shall be credited with $10,000.00 in and through this escrow . . .", required that he, the plaintiff, was to receive said commission by a cash payment at close of escrow and as a disbursement out of the $15,000 down payment to be deposited by the purchaser. Hansen and Herond maintained that it was the intent of said language that plaintiff's commission was to be derived by deferred payments from the deal rather than by cash out of the down payment to be paid by the buyer. As a result of this argument, all parties left the escrow bank without entering into an escrow agreement, and no escrow was ever entered into, nor was the property sold. The plaintiff informed defendant Hansen at the escrow that he would not accept his commission by taking paper for the same.

With reference to the interpretation of the foregoing Exhibit 6, the court found "that the plaintiff ENNIS COTTON was to be credited with $10,000.00 in and through the escrow as his compensation; *that he was to be credited, not in cash, but through extended payments through escrow;* that the plaintiff's compensation was based upon 5% of the sales price of $172,000.00 plus an additional sum by reason of the extended payment, making a total compensation to be paid to the plaintiff in the sum of $10,000.00." (Emphasis added.)

Plaintiff Cotton at no time notified Hansen, or anyone connected with the corporation, that he, the plaintiff, withdrew his repudiation of the provisions of Exhibit 6 relative

to commissions or that he would accept performance under the terms of Exhibit 6 by taking his commission in a manner other than by cash through escrow; and he maintained in his complaint that he had fully performed all of the terms and conditions to be performed by him in said agreement (Exhibit 6), and that the sum of $10,000 was due him for commission.

To us it seems axiomatic that respondent's claim for a commission herein is dependent upon the aforesaid purchase agreement of April 12, 1954, designated Exhibit Number 6. This agreement provided that "Broker shall be credited with $10,000 in and through this escrow which shall be broker's commission . . ." the meaning of which is explained in the finding of the court quoted above. The agreement contemplated the opening of an escrow, necessarily a condition upon which the promise to pay a commission was predicated. That payment of the commission was conditioned upon the completion and closing of the escrow is evidenced by the court's finding that the commission was not payable in cash but through extended payments through the escrow to be opened and closed. But, in the instant case, the escrow was not even opened. The query naturally arises, Why? The answer is contained in the court's finding ". . . That Mark Hansen intended to consummate the sale of the real property up until the time of the escrow; *that Mark Hansen left the escrow not because he did not have authority from the Board of Directors of Jewel Theatre Corp., but because the escrow instructions were not drawn in accordance with the agreement set forth in Exhibit 6 . . .*". (Emphasis added.) From a review of the record it is evident that the escrow was not opened because respondent insisted, contrary to the language of the agreement, as found by the trial court, that he was to be paid his commission in cash at the close of escrow out of the $15,000 to be deposited by the purchaser, rather than out of deferred payments on the transaction.

■ The right of a broker to recover his commission must be measured primarily by the terms of his employment. It seems clear to us that in the case at bar two conditions in the agreement concerning a commission were unfulfilled, viz.: no escrow opened and no escrow closed. And, from the findings of fact it is apparent that the failure to fulfill the aforesaid conditions was attributable to respondent's refusal to adhere to the provisions of the purchase agreement of April 12, 1954 (Exhibit 6). ■ Where the broker makes

his compensation depend upon a contingency or the happening of a condition precedent (the opening or closing of an escrow), and such contingency does not occur, he has no right of recovery (*Dale* v. *Raines*, 115 Cal.App.2d 309, 311 [252 P.2d 22]; *Ridgway* v. *Chase*, 122 Cal.App.2d 840, 847 [265 P.2d 603]; *Sanstrum* v. *Gonser*, 140 Cal.App.2d 732, 739 [295 P.2d 532]).

■ We are further persuaded that appellant's admitted lack of authority to sign the agreement for the corporation had no causal connection with the claimed damage to respondent. Where, as here, there is no claim of bad faith, the breach of warranty must be the proximate cause of an injury detrimental to the promisee (Civ. Code, § 1789, subd. 6). A mere reading of what we have hereinbefore said concerning respondent's conduct at the escrow office leads unerringly to the conclusion that it was respondent's erroneous construction of the legal effect of the language of the contract regarding the method of paying his commission that, as the trial court stated, "broke up the entire situation." In other words, let us assume that appellant possessed the requisite corporate authority to sell the property of the corporation, what could respondent have recovered from the latter when the deal failed to materialize because of respondent's conduct at the escrow office as hereinbefore narrated? We are satisfied that there could be no recovery since no escrow was opened or closed due to the facts, as the trial court found, that respondent insisted that the escrow instructions concerning his commission be drawn in a manner contrary to the foregoing sales agreement—Exhibit 6. The opening and closing of an escrow being conditions upon which respondent's right to a commission depended, and he himself having prevented the happening of these conditions by insisting upon escrow instructions which the court found were repugnant to the sales agreement, he cannot now contend that he "performed all of the conditions on his part to be performed," and thereby earned his commission. Had the escrow instructions been signed and appellant refused or was unable to file in the escrow the necessary documents showing consent of the shareholders of the corporation, then respondent could of course recover damages by reason of appellant's lack of corporate authority necessary to consummate the transaction, but such a situation never materialized due to respondent's own acts in violation of the terms of the foregoing Exhibit 6. We are persuaded that there was

no causal connection between appellant's lack of warranted corporate authority and respondent's claimed damage.

For the foregoing reasons, the judgment is reversed.

Doran, J., and Fourt, J., concurred.

A petition for a rehearing was denied December 14, 1956, and respondent's petition for a hearing by the Supreme Court was denied January 23, 1957.