[Civ. No. 22633. Second Dist., Div. Three. Dec. 30, 1958.]

LAWRENCE BLOCK COMPANY, INC. (a Corporation), Appellant, v. HARRY L. SCHOLER, Respondent.

Osburn & Osburn for Appellant.

Brand & Livingston for Respondent.

WOOD (Parker), J.—Action to recover real estate broker's commission. In a nonjury trial, judgment was for defendant. Plaintiff appeals from the judgment.

Appellant contends that the court erred in failing to find on certain material issues; that the findings do not support the judgment; that certain findings are inconsistent; and that the court erred in rulings as to admissibility of evidence, and erred in granting defendant's motion to amend his answer to conform to proof.

With respect to asserted failure to find on material issues, appellant argues that the court erred in failing to find (1) whether defendant negotiated with plaintiff regarding a sale of the property after the time limit fixed by the listing agreement, and (2) whether plaintiff produced the buyer. He argues further that findings on those issues, in accordance with the evidence, would have required judgment in favor of plaintiff.

On May 19, 1955, defendant signed a "listing" which provided in part that plaintiff, a real estate broker, had the ex-

clusive right, for 90 days, to sell the defendant's house and lot, and furniture in the house, for $150,000. The property was not sold during the 90-day period (which expired August 17, 1955). Plaintiff advertised the property for sale from May 22, 1955, to and including August 14, 1955.

About September 9, 1955, Mr. Gocio, a salesman for plaintiff, requested that defendant sign another listing which also provided that plaintiff had the exclusive right, for 90 days, to sell the property for $150,000. Defendant refused to sign the proposed listing, and the listing was modified, at his request, to provide that plaintiff had the exclusive right, for 30 days, to sell the property for $150,000. The listing provided further that if the property was sold within 30 days from the date thereof, or if defendant sold the property within 60 days after the expiration of the "agency period" to a person with whom plaintiff had negotiated, defendant would pay a commission of 5 per cent to plaintiff. The listing also provided that plaintiff would diligently endeavor to find a purchaser for the property upon the terms specified and would advertise said property weekly at no charge to defendant. On September 9, 1955, the defendant, and Gocio as "Sales Representative" of plaintiff, signed the modified listing. Plaintiff advertised the property for sale from September 11, 1955, to and including October 15, 1955, which was the approximate period of the second listing. The property was not sold within the 30-day period provided in the second listing, or within 60 days after the expiration of the 30-day period. (The 30-day period expired October 9, and the 60-day period expired December 8.)

In December, 1955, defendant prepared a brochure with reference to the property, and he mailed copies of it to approximately 200 real estate brokers, including plaintiff. The price of the property without the furniture, as stated in the brochure, was $115,000. Soon after the brochures were mailed, Gocio talked to defendant on the telephone and said that he had received a brochure, and he requested that defendant give another exclusive listing of the property to plaintiff. Defendant refused the request and told Gocio that he (Gocio) would have to handle a sale of the property the same as any other broker. In January, 1956, defendant prepared a revised brochure and mailed copies of it to approximately 200 real estate brokers, including plaintiff. The price of the property (without the furniture), as stated in the brochure, was $110,000; and the price of the property with the furniture was $125,000.

Salesmen for plaintiff, and salesmen for other brokers, took prospective buyers to the property after October 9, 1955 (the expiration date of the 30-day period provided in the second listing).

On February 27, 1956, Gocio showed the property to Mr. and Mrs. Cole. Later, on that day, the defendant, Mr. Cole, Mr. Gocio, and Mrs. Tremaine (a broker who was present at the request of Mr. Cole) had a conversation regarding a purchase of the property by Cole; and, at that time, Gocio tendered to defendant, upon behalf of Cole, a written offer of $100,000 for the property (including the furniture). Defendant rejected the offer and said that he would not sell the property for less than $110,000. On February 29, defendant told Gocio and Mrs. Tremaine that he would sell the property (including the furniture) for $105,000, net to him, and that Mrs. Tremaine and plaintiff would have to obtain their commission from Cole. Mrs. Tremaine and Gocio said that "that was agreeable." Later, on that day, Cole told Mrs. Tremaine and Gocio that he would pay $105,000 for the property, including the furniture, and that, in addition to that amount, he would pay to Gocio and Mrs. Tremaine one-half of the regular commission of 5 per cent on the $105,000 price amounting to $2,625. Gocio testified that later, on that day (February 29), he talked to defendant by telephone, and he told defendant that defendant was "getting the deal that he had asked for" and that Cole had volunteered to pay the commission. Defendant testified that Gocio did not talk to him by telephone, later on that day; that he (defendant) talked with Mrs. Tremaine by telephone, later that day, and she said, "I have made a deal on your terms. You have a deal."

On March 5, escrow instructions were prepared at a bank. The instructions provided that the purchase price of the house and lot was $90,000; the purchase price of the furniture was $15,000; and no commission was payable through the escrow.

Before the instructions were signed, a controversy arose between Gocio and Cole regarding the amount of commission to be paid to plaintiff. Thereupon defendant talked by telephone to Mr. Barnett, vice-president of plaintiff, regarding the controversy. Defendant testified that Barnett said (in that conversation) that anything Gocio agreed to was acceptable to plaintiff; and that Barnett requested that defendant obtain a written agreement from Cole that he would pay to

plaintiff the amount that was agreed upon by Cole and Gocio.

Cole testified that Gocio told him (after that conversation) that he would accept $1,125, instead of $1,312.50, from Cole as plaintiff's commission. A written memorandum was prepared which provided that Cole agreed to pay $1,125 to plaintiff, upon the consummation of the escrow, in full payment for plaintiff's services pertaining to the sale of the property. Cole and defendant signed the memorandum. Then Cole requested Gocio to obtain the signature of one of plaintiff's officers on the memorandum, in a space provided thereon for acceptance by plaintiff. Cole testified that Gocio said that he would obtain the signature; and that Gocio took the memorandum and left the bank. Defendant and Cole signed the escrow instructions. The memorandum was retained by plaintiff and was not signed by any one upon behalf of plaintiff. There was no communication between plaintiff and defendant thereafter until the present action was commenced. The sale was consummated; and the escrow was closed April 5, 1956. The present action to recover $5,250 commission was commenced March 29, 1956, prior to the close of the escrow.

The complaint alleged, in part, as follows: Plaintiff and defendant entered into the agreement of September 9, 1955, referred to above. After the expiration of the 30-day period provided by the agreement, plaintiff, at the request of defendant, continued its efforts to find a purchaser for the property and, with the knowledge and approval of defendant, negotiated with Cole regarding the purchase of the property. Plaintiff performed all obligations required to be performed by it under the agreement of September 9, 1955, "as extended by Defendant . . . ." Plaintiff "produced" Cole as a buyer, and on March 5, 1956, defendant and Cole entered into an agreement wherein defendant agreed to sell and Cole agreed to buy the property for $105,000.

Cole was a defendant in the action and, in the second cause of action which was against Cole only, the plaintiff alleged that Cole assumed and agreed to pay plaintiff's commission on the sale. At the commencement of the trial, Cole deposited his check for $1,125 (payable to plaintiff) with the clerk of the court as a tender of the amount to be paid as commission. Plaintiff did not accept the check, but dismissed the action as to Cole. At the conclusion of the trial, the check was returned to Cole.

Defendant filed an answer in which he admitted that he

executed the listing agreement of September 9, 1955, and that he sold the property; and he denied the other above-mentioned allegations of the complaint.

The court made findings which were substantially in accordance with the facts above stated regarding the agreements, the negotiations and sale. It also made findings, as follows: After December, 1955, all of plaintiff's efforts to sell defendant's property were made pursuant to the mimeographed brochures. After December, 1955, defendant was "dealing" with plaintiff "pursuant to the mimeographed brochures in the nature of open listings." That defendant, by allowing plaintiff to show and attempt to sell the property after December, 1955, did not extend the "September 9, 1955, agreement or waive the expiration date of October, 1955, contained therein." "Even if the September 1955 written agency agreement between plaintiff and defendant had been extended, or if the October 9, 1955 expiration date had been waived by defendant . . . said agreement was orally modified by plaintiff and defendant on February 29, 1956 to provide for a sale only at a net price of $105,000. to defendant with plaintiff to receive its commission only out of the excess above this amount that the buyer would pay . . . ." Plaintiff agreed to accept $1,125 from Cole in full payment of its commission. Under the oral modification, if defendant had sold the property to Cole for $105,000 and if Cole had been unwilling to pay any more than that amount, plaintiff would not have been entitled to receive any commission. After the oral modification of February 29, 1956, plaintiff "stood by and allowed" defendant to make a sale to Cole for $105,000 with knowledge that defendant was relying on "the said oral modification." As a result of plaintiff's silence, and as a result of Gocio's statement to defendant at the bank that the payment of $1,125 to plaintiff by Cole in payment of the commission was satisfactory, plaintiff is estopped to deny "the legal efficacy of the said oral modification." Gocio was the agent of plaintiff and had authority to enter into the agreement of September 9, 1955, and to modify the agreement.

The court concluded, among other things, that the written agency agreement dated September 9, 1955, expired under its terms October 9, 1955; the expiration date was not extended by mutual agreement, and it was not waived by defendant.

Appellant (plaintiff) contends, as above stated, that the court erred in failing to find whether or not defendant continued negotiations with plaintiff after the time limit fixed

by the listing agreement; and contends that, in view of the nonconflicting evidence as to negotiations, the court should have found that defendant continued negotiations with plaintiff regarding the sale after such time limit, and that defendant thereby waived the time limit. It seems to be appellant's argument that negotiations to any extent between the owner and the broker, regarding the sale of the property, after the expiration of the time limit fixed by the listing agreement, constitute a waiver of the time limit as a matter of law without regard to any other factors. Whether or not there has been a waiver of the time limit fixed by a listing agreement depends on the facts and circumstances of the particular case. (*Filante* v. *Kikendall*, 134 Cal.App.2d 695, 700 [286 P.2d 448].) It is true that the findings do not include an express statement that defendant did continue, or did not continue, negotiations with plaintiff after the expiration of the time limit. There were findings, however, as to conversations and acts of the parties, regarding the property, after the expiration date. It is apparent from those findings that the court found in effect that there were negotiations between plaintiff and defendant, regarding the sale of the property, after the expiration of the time limit but that such negotiations were not pursuant to the listing agreement. Some of those findings were that defendant refused plaintiff's request that defendant sign another exclusive listing; that defendant told plaintiff that plaintiff would have to handle a sale the same as any other broker; that after the expiration date defendant sent brochures, which were in the nature of open listings, to many brokers; that approximately at the expiration date plaintiff ceased advertising the property for sale; that after December all the efforts of plaintiff to sell the property were pursuant to the brochures. The evidence supports those findings and the finding that the expiration date was not extended or waived by defendant.

 Appellant contends that the court erred in failing to find whether or not plaintiff produced the buyer to whom defendant sold the property; and contends that the court should have found that plaintiff produced the buyer. Under the circumstances here the question whether plaintiff produced the buyer was immaterial. If a broker fails to perform the services required of him within the time limited by the contract, or within such extension of time as may be granted by the principal, he is not entitled to a commission, unless the time limit is waived. (*Ridgway* v. *Chase*, 122 Cal.App.2d 840

[265 P.2d 603].) ▮▮▮ Since the court determined upon substantial evidence, as above stated, that defendant did not extend or waive the time limit, it was not necessary to find whether or not plaintiff produced the buyer.

▮▮ Appellant contends that the finding that the listing agreement of September 9 was modified on February 29 by an oral agreement is inconsistent with the finding and conclusion that the time limit fixed by the agreement of September 9 was not extended or waived. Appellant argues to the effect that if the agreement of September 9 had terminated there was no agreement to modify. As above shown, the court made a finding that the time limit fixed in the listing agreement had not been extended or waived. Thereafter, in the findings, the court made the alleged inconsistent finding regarding an oral modification. That finding was indefinite in that it was made upon a hypothetical basis. That further finding was in part, as follows: "*Even if* the September 1955 written agency agreement . . . had been extended, or if the . . . expiration date had been waived by defendant . . . said agreement was orally modified . . . on February 29, 1956 to provide for a sale only at a net price of $105,000 . . . plaintiff to receive its commission only out of the excess above this amount that the buyer would pay . . . ." (Italics added.) It thus appears that the trial judge, after having made a definite finding that there was no extension or waiver, proceeded to make a further finding upon the hypothetical basis of assuming facts contrary to his previous finding. The words "Even if," at the beginning of the further finding, show that the judge was proceeding to set up an assumed state of facts as a basis for forecasting what his decision would be if the facts had been different from what he had found them to be. Under such circumstances, the indefinite finding as to oral modification is of no significance, and it is not inconsistent with the finding that there was no extension or waiver.

▮▮▮ Appellant contends that "some" of the findings are not supported by the evidence; that some of the alleged findings do not constitute findings for the reason they are summary statements of evidence and not ultimate findings of fact, and they are uncertain, and conjectural. ▮▮ "If one finding, sustained by sufficient evidence, will support the trial court's judgment . . . an appellate court will presume that the judgment was predicated on such finding, and questions relative to other findings become immaterial upon appeal and may be disregarded." (*Logan* v. *Forster*, 114 Cal.App.2d 587, 602

[250 P.2d 730].) ▪▪▪ As above stated, the court found that defendant did not extend or waive the time limit fixed by the listing agreement. That finding supports the judgment.

Appellant contends that the court erred in granting defendant's motion for permission to file an amendment to his answer to conform to proof; that the amendment filed by defendant does not conform to proof but alleges new affirmative defenses; that the court erred in overruling plaintiff's objections to the introduction of certain evidence regarding such affirmative defenses; and that the court erred in making findings regarding such defenses. As above shown, plaintiff sought (by its complaint) to recover a commission on the basis that the time limit fixed by the listing agreement had been extended or waived. In view of the above conclusion that the evidence was sufficient to support the finding that the time limit was not extended or waived, it is not necessary to determine these contentions regarding the ruling on the motion to amend to conform to proof, and regarding the rulings and findings as to the affirmative defenses.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied January 20, 1959, and appellant's petition for a hearing by the Supreme Court was denied February 25, 1959.