TAYLOR, J. pro tem.
 
 *
 

 This is an appeal from a judgment on a jury verdict rendered in favor of plaintiff real estate broker for a commission in the amount of $14,155.80 for the sale of ranch property in Santa Clara County. The sole issue is whether there is any substantial evidence to establish an oral waiver or extension of time by the seller for the performance by the plaintiff broker of an exclusive written authorization to sell.
 

 Having in mind the familiar rule that on appeal all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in favor of the
 
 *54
 
 verdict, the court will summarize the facts most favorable to the plaintiff’s case.
 

 On November 23, 1954, defendant landowners entered into a written contract with the plaintiff real estate broker granting her a six months’ exclusive to sell their ranch. The six months’ period terminated on May 23, 1955. On February Í8, 1955, defendants agreed to sell to one Matthew Kelly. This deal had been negotiated through the efforts of two other brokers with plaintiff’s consent. Under the terms of the Kelly contract, Kelly was given until August 1, 1955, to get subdivision plans approved and complete the sales transaction, but the deal collapsed and was abandoned on that date. A short time after August 1, 1955, the plaintiff presented the defendants another written exclusive agency contract. Defendant Earle Smith referred her to his brother defendant Everett Smith who refused to sign any new exclusive stating that “the lawyer had told him not to sign anything.” However, he told her she could work on the property. The defendants at this time increased the sales price from $5,500 an acre net to $6,000 an acre net. After August 1 plaintiff never advertised the property by mail, newspaper or radio.
 

 Later in August the plaintiff called on Ira Higgins, the ultimate purchaser, concerning the purchase of the property. Since Higgins resided near the property and was familiar with it, plaintiff did not show him the property but did show him some illustrative maps. Higgins told plaintiff he was interested in buying defendants’ land, subject only to the freeway not passing through it. The plaintiff transmitted this message to the defendant sellers. Defendant Everett Smith told her to “ ‘bring me an offer without any conditions and we’ll accept it.’ ” After the Kelly deal collapsed on August 1, 1955, the defendants told plaintiff on three or four occasions to try to find them a buyer, and both defendants Earle and Everett Smith'told her that because of the work she had done they felt she was entitled to a commission regardless of who sold it. .The plaintiff proceeded to show the property to prospective ■buyers “probably” a dozen times.
 

 About February 19, 1956, the plaintiff learned that the freeway was not going through the defendants’ property and . that Ira Higgins was again interested. She contacted Higgins, who informed her he had been to see the defendants about the property, had' looked it over, and that he was interested. On February 23, 1956, the defendants sold the property direct to Higgins. Just before this sale was consummated plaintiff
 
 *55
 
 called on the defendant Earle Smith and his wife and told them she had presented the property to Higgins, and asked them to sign a paper to that effect which they refused to do.
 

 The defendants contend that viewing the facts in a light most favorable to the plaintiff, the original exclusive agency contract had terminated on May 23, 1955, that there was no valid oral extension or waiver of time for its performance beyond August 1, 1955, and any authorization in existence between the parties after that date was oral and unenforceable under the statute of frauds.
 

 Code of Civil Procedure, section 1973, subdivision 5, provides that an agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission is invalid unless it is in writing and signed by the party charged. The courts of this state have consistently refused to permit recovery under oral agency contracts or in
 
 quantum meruit
 
 even in cases where much effort, time and money has been expended by the realtor in the sale of property.
 
 (Ford
 
 v.
 
 Palisades Corp.,
 
 101 Cal.App.2d 491 [225 P.2d 545];
 
 Jamison
 
 v.
 
 Hyde,
 
 141 Cal. 109 [74 P. 695]; Mc-
 
 Phail
 
 v.
 
 Buell,
 
 87 Cal. 115 [25 P. 266];
 
 White
 
 v.
 
 Hirschman,
 
 54 Cal.App.2d 573 [129 P.2d 430];
 
 Gould
 
 v.
 
 Otto,
 
 81 Cal.App. 409 [254 P. 272].) A real estate broker as a professional man, is presumed to know that contracts for real estate commissions are unenforceable unless in writing. He assumes the risk of relying on oral promises and has no reason to complain if his efforts are unrewarded.
 
 (King
 
 v.
 
 Tilden Park Estates,
 
 156 Cal.App.2d 824, 830 [320 P.2d 109].) Without the protection of the Statute of Frauds, the seller is called upon to meet the bald assertion of a promise to which he can interpose nothing but his simple denial.
 
 (Kroger
 
 v.
 
 Baur,
 
 46 Cal.App.2d 801, 803 [117 P.2d 50].)
 

 However, in
 
 Baker
 
 v.
 
 Curtis,
 
 105 Cal.App.2d 663, 669-670 [234 P.2d 153], the court held “where, as here, the owner, after the time limit provided in the contract had expired, urged and encouraged the broker to continue his efforts to find a purchaser for the property, and the broker did so continue with the knowledge, approval and encouragement of the owner, and, as a result of the broker’s efforts, a purchaser to whom the owner sold the property was produced,
 
 under such circumstances
 
 the time limit in the written contract must be considered as having been waived and the broker is entitled to his commission. To hold otherwise would in our opinion
 
 *56
 
 permit the use of the statute of frauds to perpetrate a fraud. ’ ’ (Emphasis added.) The courts have further enunciated this principle in
 
 Lewis
 
 v.
 
 Foppiano,
 
 150 Cal.App.2d 752 [310 P.2d 658], and
 
 Filante
 
 v.
 
 Kikondall,
 
 134 Cal.App.2d 695 [286 P.2d 448],
 

 Whether there is a waiver or extension of time of a written exclusive is a question of fact for determination in the trial court
 
 (Genung
 
 v.
 
 Nelson,
 
 138 Cal.App.2d 575 [292 P.2d 297]), and the only question in this case is whether there is sufficient evidence of the granting of such a waiver, after the Kelly deal was abandoned on August 1, 1955, and that it remained effective until the sale to Higgins on February 23, 1956.
 

 The plaintiff contends that defendants clearly extended the time of the-written exclusive from May 23, 1955, until August 1, 1955, by giving Kelly until August 1 to complete the sale. Certainly there was an extension for the limited purpose of assuring the plaintiff the right to collect her commission on the Kelly deal. However, it is difficult to see, in the absence of further authorization from the defendants, how the time extension for this limited purpose could have justified the plaintiff in working under the written exclusive until August 1 had the Kelly deal collapsed at an earlier date. In any event, any previous extension of time for the performance of the written exclusive, whether limited or unlimited in character, definitely terminated on August 1, 1955, with the abandonment of the Kelly deal.
 

 We must then look to the negotiations between the parties on and after August 1, to determine whether there was a further waiver or extension of time. The defendants contend that their refusal to sign a second exclusive on that date had the definite effect of terminating the original written exclusive for all purposes and cannot be reconciled with a waiver of time. We do not agree. The defendants might understandably encourage the plaintiff to continue her efforts under the original exclusive, but nevertheless be unwilling to tie the property up by written agreement for another definite and irrevocable period of time.
 

 Defendants further argue that plaintiff’s testimony that she did not advertise the property after the defendants refused to sign a new exclusive on August 1 because she realized she did not have it tied up on a written contract, clearly shows that plaintiff did not consider that she had been granted a waiver of time under the original exclusive. How-
 

 
 *57
 
 ever, a waiver or extension of time may be terminated by the owner at any time prior to the agent’s producing a purchaser, and in any event is effective only so long as the encouragement continues and the agent pursues her efforts.
 
 (Baker
 
 v.
 
 Curtis, supra, Augustine
 
 v.
 
 Trueco,
 
 124 Cal.App.2d 229, 239 [268 P.2d 780].) Thus one who has property tied up on a renewed written exclusive for a specific period of time, might reasonably be expected to expend more money and effort, than where there is an oral waiver of time which is subject to immediate termination. Failure to advertise is merely a fact to be considered in determining the agent’s diligence, and is not irreconcilable with waiver.
 

 The defendants rely on
 
 Lawrence Block Co.
 
 v.
 
 Scholer,
 
 166 Cal.App.2d 608, 614 [333 P.2d 396], In that ease, as here, there was,
 
 among other facts,
 
 a refusal of the agent’s request to sign another exclusive listing, and the agent ceased advertising. The court found there was no waiver and the judgment was affirmed. However, the appellate court said “Whether or not there has been a waiver of the time limit fixed by the listing agreement depends upon the facts and circumstances of the particular ease.’’ We cannot regard this ease as authority for the proposition that there can be no waiver as a matter of law where these two factual situations exist.
 

 Accepting the plaintiff’s testimony in a most favorable light, as we must on appeal, she was told by the defendants to continue to work on the property at the time they refused to sign the second exclusive on August 1, 1955, and was encouraged by them repeatedly thereafter until the property was sold. She showed the property a number of times. The owner knew of the plaintiff’s efforts and at no time disapproved. In August she called on the ultimate purchaser, Higgins, and carried his offer to buy, clear of the freeway, to the defendants. Subsequently when the freeway was eliminated, she heard of his renewed interest, and called on him again just prior to the sale on February 23, 1956. There was evidence that the agent was continually encouraged by the owner after the expiration of the written exclusive, diligently pursued her agency up until the time of sale and produced the purchaser during the time extension. The waiver or extension was thus granted under the rule of the Baker ease and was kept alive as required in
 
 Augustine
 
 v.
 
 Trucco, supra.
 

 The judgment is affirmed.
 

 Bray, P. J., and Tobriner, J., concurred.
 

 *
 

 Assigned by Chairman of Judicial Council.