[Civ. No. 6787.   Fourth Dist.   Dec. 6, 1962.]

THEODORE C. DEVEREAUX et al., Plaintiffs and Appellants, v. R. W. HARPER et al., Defendants and Respondents.

520

Oakes & Horton, Gray, Cary, Ames & Frye, Harry H. Horton, Jr., and John M. Cranston for Plaintiffs and Appellants.

Edwin L. Searle, Ferdinand T. Fletcher and Higgs, Fletcher & Mack for Defendants and Respondents.

GRIFFIN, P. J.—Plaintiffs and appellants, Theodore C. Devereaux and W. R. Scull, individually and doing business as Devereaux-Scull Co., a copartnership, licensed real estate

brokers, brought this action against defendants and respond-
ents R. W. Harper, Lila C. Witcher, Marion Fesler Marchand
and De Anza Harbor, Inc., a corporation, et al, for the sum of
$75,000 alleged to be due them as the result of their having
located a purchaser for defendants' property and because
defendants failed to complete the sale thereof.

The complaint is in two counts. The first seeks recovery upon
the written ''authorization to sell'' set forth in and made a
part of the complaint and pleadings. The second count is for
work and labor claimed to have been performed for defendants
in this respect.

From the allegations of the complaint, plaintiffs are appar-
ently proceeding upon the theory that the property of defend-
ants was listed with plaintiffs under an agreement to pay a
commission of $75,000 upon a sale of the property and that
they produced a purchaser ready, willing and able to purchase
upon the terms designated in the authorization to sell, and
that defendants refused to consummate the sale. Recovery is
sought, claiming that a broker earns his commission when he
produces a purchaser ready, willing and able to buy upon the
terms specified by the owner.

The original complaint was based mainly on this theory.
It suffered an attack by general and special demurrers before
a judge other than Judge Monroe and the general demurrer
was sustained with leave to amend. A first amended complaint
was filed and a general demurrer was argued before the same
judge, who sustained it with leave to amend. Plaintiffs filed a
second amended complaint, which was heard before this same
judge, and the court overruled the general demurrer and time
was allowed to file a special demurrer and motion to strike
portions of the complaint. A special demurrer was filed and
another judge heard it. After lengthy argument, this judge
sustained the special demurrer and ordered that plaintiffs'
first complaint be reinstated as plaintiffs' third amended com-
plaint. Time was given to answer. Subsequently, on January
11, 1961, that judge set aside his order sustaining the special
demurrer filed January 6, 1961, and ordered that defendants'
special demurrer to plaintiffs' amended complaint be sus-
tained, with permission to amend. Plaintiffs then filed a third
amended complaint and defendants demurred thereto both
generally and specially. The hearing on these demurrers was
had before the instant judge and, after lengthy arguments and
submission of authority, he rendered a written opinion sus-

taining the general demurrer without leave to amend and the action was dismissed. The appeal is from this judgment.

The written opinion of that court recites generally: "The written agreement between the defendants and plaintiffs, whereby defendants agreed to pay a commission, is in the nature of an 'exclusive right to sell.' By its terms it is agreed that a commission of 5% upon the selling price of $1,500,000 is to be paid·upon a sale of the property during the period of the listing, which was from June 5, 1959 to July 3, 1959. The agreement further provides that in case a sale should be made within two months after the termination of the authorization to a party with whom the broker had negotiated and concerning which negotiations the owner had been notified in writing, the same commission would be paid. The property described to be sold consisted of tracts of land in the Mission Bay area leased from the City of San Diego and improved by the structures known as the 'DeAnza Trailer Harbor.' The brokers were employed to effect a sale of that leasehold interest together with the improvements and equipment used in that business.

"Made a part of that agreement is a further written agreement in which it is stated that ["It is understood and agreed by buyers and sellers that sale is being made contingent upon the following conditions:] . . . There follows seven conditions which are to be met.

["(1) Upon Buyers' approval of all agreements between sellers and City of San Diego.

(2) Acceptance·by Buyers of Audit of Income and operating expenses.

(3) Upon approval of City of San Diego to transfer of lease and amendments to buyers.

(4) Upon sellers installing and paying for installation of facilities for 126 additional trailer units to conform to City of San Diego specifications and acceptance.

. . . . . . . . . . . .

(7) Inc. being leasehold Corporation Inc. must be legally protected to satisfaction of sellers' attornies [*sic*] so that sellers may protect lease in case of default."]"

As will be noted, the transaction is subject to the approval of the City of San Diego to a transfer of the lease and the amendments to the buyer. The written opinion states further: "It is unnecessary to notice all of these conditions in detail, but the seventh is important.

"The offer to purchase signed by the prospective purchaser stated that the purchaser was offering to purchase the property 'as per listing agreement with Devereaux-Scull Co. dated June 5, 1959.' It was provided that a copy of the lease and all amendments and agreements with the city should be placed in escrow to be accepted or rejected by the buyer within three days, and it was further provided that any modification to the lease or amendments thereof were to be approved by the buyer."

The offer to purchase also recited that a check for $50,000 was delivered to the agent to be paid to a prescribed escrow agent; that seller should furnish a transfer of lease and perfect title or, at the option of the buyer, return buyer's deposit. The printed provision in the offer to purchase, providing that:

"Should the purchaser not complete the purchase of said property upon the terms herein set forth, the amounts paid hereon may be retained by the seller, at his option, as consideration for the execution of this agreement by the seller. Time is the essence of this contract."

was stricken out by the agent who prepared the printed form of offer for the proposed purchasers. It also provided that the offer was binding on purchaser until July 10, 1959 at 5 p. m. The agreement was dated July 3, 1959. It was signed by Point Loma Development Corporation and plaintiffs' agent. Plaintiffs therein acknowledged receipt of the deposit. The forms for the acceptance by defendants of the offer were not filled in and they were not signed by the sellers.

It is plaintiffs' contention on this appeal that this is an unconditional acceptance of defendants' offer to sell and that the only necessary facts to be alleged to state a cause of action are that he furnished a buyer, ready, able and willing to purchase on those terms, that defendants refused to sell, and that he performed all the conditions of the agreement of employment and authorization to sell on his part to be performed. (Citing such authority as *Merwin* v. *Shaffner,* 31 Cal.App. 374, 377 [160 P. 684]; Code Civ. Proc., § 457; *Hill* v. *City of Santa Barbara,* 196 Cal.App.2d 580 [16 Cal.Rptr. 686]; *Collins* v. *Vickter Manor. Inc.,* 47 Cal.2d 875 [306 P.2d 783]; *Beason* v. *Griff,* 127 Cal.App.2d 382, 386 [274 P.2d 47]; *Coulter* v. *Howard,* 203 Cal. 17, 23 [262 P. 757].)

Complaint is also made that even if the complaint was defective, such defect could be cured by amendment and the court erred in not allowing such an amendment. (Citing such authority as *Temescal Water Co.* v. *Department Public Works,* 44 Cal.2d 90 [280 P.2d 1]; *Skipper* v. *Gilbert J. Mar-*

*tin Constr. Co.,* 156 Cal.App.2d 82 [318 P.2d 732].) It does not appear that the plaintiffs have pointed out, either to the trial court or to this court, in what manner the complaint could be amended so as to state a cause of action under the contracts pleaded. Under the circumstances here related, it appears that plaintiffs endeavored to state a cause of action by many amendments of the original complaint. Although the same reasoning here following is not altogether in harmony with the reasons adopted by one of the other judges, we see no probability that the complaint could be further amended to meet the objections indicated. (See *Starbird* v. *Lane,* 203 Cal.App.2d 247 [21 Cal.Rptr. 280].)

The reasoning of the trial judge, in sustaining the demurrer without leave to amend, is set forth in the well-reasoned written opinion filed in the case, which we adopt in part as a sufficient disposition of the points presented. He recites: .

"It is a general proposition that a broker is employed to effect a sale of the property and that his commission is to be paid when he so effectuates a sale. Of course, where property is listed for sale upon certain defined terms and a purchaser is produced who is shown to be ready, willing and able to buy upon the terms thus laid down by the owner, the right to a commission cannot be defeated by the owner refusing to carry out the sale. The circumstances under which a commission is to be paid can be and are governed by the contract of employment. When, therefore, in the original listing the terms are not entirely defined, it follows that the services of the broker have not been completed until he has brought about a meeting of the minds between the owner and the prospective purchaser as to the terms upon which the owner will sell and the purchaser will buy." (Citing *Lindley* v. *Fay,* 119 Cal. 239 [51 P. 333]; *Ayres* v. *Thomas,* 116 Cal. 140 [47 P. 1013]; *Silva* v. *Goldman,* 117 Cal.App. 423 [4 P.2d 191]; *Dexter* v. *McManus,* 188 Cal.App.2d 312 [10 Cal.Rptr. 336].)

Additional authority for this conclusion may be found in *Spinney* v. *Downing,* 108 Cal. 666 [41 P. 797]; *Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300 [266 P.2d 856]; *Edgecomb* v. *Callahan,* 132 Cal.App. 248 [22 P.2d 521]; *Niles* v. *Hancock,* 140 Cal. 157 [73 P. 840], where it is held that a qualified acceptance of an offer constitutes a rejection of the original offer and puts an end to it. In *American Aeronautics Corp.* v. *Grand Central Aircraft Co.,* 155 Cal.

App.2d 69 [317 P.2d 694], it was held that to result in a binding contract, the acceptance must meet the terms proposed in the offer exactly, precisely and unequivocally; that an offer must be accepted according to its tenor before a binding contract is formed; that mere statements of intention or promissory expressions will not suffice to constitute acceptance of a contract and that where one person offers to do a definite thing and another introduces a new term into the acceptance, his answer is a mere expression of willingness to treat, or is a counter-proposal, and in neither case is there a contract. See also 1 Williston on Contracts (rev. ed. 1936) § 45, p. 131, where the rule is stated to be that:

"Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet, if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise." (See also *Olsen* v. *Spomer,* 192 Cal.App.2d 99, 102 [13 Cal.Rptr. 392]; *Smith* v. *Wright,* 188 Cal.App.2d 790, 793 [10 Cal.Rptr. 675]; *Gould* v. *Callan,* 127 Cal.App.2d 1, 5 [273 P.2d 93]; *Bonk* v. *Boyajian,* 128 Cal.App.2d 153, 156 [274 P.2d 948]; *Sanstrum* v. *Gonser,* 140 Cal.App.2d 732, 740 [295 P.2d 532]; *Cotton* v. *Jewell Theatre Corp.,* 146 Cal.App.2d 243, 248 [303 P.2d 593]; *Lawrence Block Co.* v. *Scholer,* 166 Cal.App.2d 608, 614 [333 P.2d 396]; *Uhlmann* v. *North Whittier Highlands, Inc.,* 167 Cal.App.2d 758, 763 [334 P.2d 1022]; *Wright* v. *Buzzine,* 180 Cal.App.2d 426, 429 [4 Cal.Rptr. 482].)

The trial court further stated: "It is beyond controversy that the parties contemplated by Exhibit 'A', the contract of employment, that the brokers were hired to bring about a sale of the property and were to be paid for that service. It is likewise plain that the entire terms to be accepted by the owners were not specified in the employment agreement, but were to be determined as a part of the negotiations for sale. In this connection it is important that the defendants were not the owners in fee of the property, but that they held leases from the City of San Diego upon which there were improvements. It was contemplated that deferred payments for the unpaid balance of $1,050,000 were to be made.

"With no definition as to how the sellers' leases were to be

secured except by a statement that the corporation 'must be legally protected to satisfaction of sellers' attorneys,' just how the corporation which held these leases was to be protected presents a question that any attorney would find quite difficult of solution.

"It was contemplated, therefore, that the brokers were to bring the parties together upon a proposed contract of purchase and sale in which these undetermined terms and conditions were to be solved and specified; that was a part of the service which the plaintiffs undertook to perform. It is clear that by the terms of this agreement the plaintiffs were not to be paid for producing a purchaser who announced that it was ready to purchase 'upon the terms of the listing agreement' because by the very terms of that agreement it was contemplated that the problems set forth in the seven terms and conditions were to be solved before the parties came to a meeting of the minds. In other words, it was not the contract between plaintiffs and defendants that plaintiffs were to be paid for producing a purchaser who was willing to negotiate the terms of sale, but were to be paid when and if the plaintiffs negotiated the terms of sale and brought about a meeting of the minds.

"There is no allegation that any such thing was done. There is no allegation that the proposed purchaser made any offer to purchase upon any basis which included a specification of terms which solved these conditions. All that the plaintiffs produced was a writing in which they said they were willing to purchase 'upon the terms of the listing agreement.' It is interesting to note that this writing was dated on the day on which the authorization of the agency expired."

The original agreement granted the brokers the exclusive and irrevocable right to sell said leasehold estate and equipment and accept a deposit thereon. The last paragraph of the employment agreement, immediately before the signatures of the owners, provides: "Should a deposit or amounts paid account purchase be forfeited, one-half thereof may be retained by said broker and the balance shall be paid to me [the sellers]. The broker's share of any forfeited deposit or amounts paid account purchase, however, shall not exceed the commission."

Turning to the offer to purchase, we note that the same is executed by the purchaser and that offer recites: "Delivered to undersigned agent: $50,000.00."

The portion of the standard form having to do with the

forfeiture of the deposit in case of default by the buyer, as above indicated, was stricken. The offer to purchase is thus left with no provision for retention of the deposit of $50,000 and both the brokers and the sellers are thus deprived of any right which they might otherwise have had to retain the deposit in the event the purchaser did not complete the purchase of the property.

Furthermore, the second sheet of the employment agreement states seven conditions upon which any sale was made contingent. It is stated that: "It is understood and agreed by buyers and sellers that sale is being made contingent upon the following *conditions*:" (Italics ours.)

Actually, when the employment agreement is considered as a whole, the seven *conditions* written on the second page become the *conditions* which sellers insisted must be complied with in any sale which might be made through the efforts of the brokers under the terms and provisions of the employment agreement. See *Swanson* v. *Thurber*, 132 Cal. App.2d 171 [281 P.2d 642]. We feel that the very uncertainty in the phraseology of the seven conditions found on the second page of the employment agreement indicates no other interpretation than that the sellers expected to negotiate with any prospective buyer until there was a final meeting of the minds brought about through the offices of the broker, and until such meeting of the minds took place no formal agreement could be made, and, likewise, until such formal agreement was made, neither the sellers nor any prospective buyer would be bound by any of the terms or conditions stated in the employment agreement.

The trial court, in its written opinion, then concluded: "The Court is forced to the conclusion, therefore, that the plaintiffs are unable to plead facts which would state a cause of action in view of the terms of the contract. The second count for services rendered is under well-established rules to be construed in connection with the first count and adds nothing thereto. The Court therefore has no alternative except to sustain the demurrer without leave to amend.

"In the demurrer there are presented many other grounds and also special demurrers and motions to strike. In view of the conclusion which we have reached upon the matter, which we think is determinative of the case, there is no need to discuss these further."

Regardless of the general allegation of the complaint that the agreements amounted to an agreement to sell on specified

conditions and that the written offer constituted an unconditional offer of purchase by a person ready, able and willing, we conclude that the pleaded written contracts may not be interpreted otherwise than as is shown by the contracts pleaded. It affirmatively appears therefore that (1) the offer to purchase was not unconditional and at most constituted only an unaccepted counteroffer by the purchasers; (2) the terms of the employment agreement were too indefinite to give rise to a binding contract when accepted, and (3) at most, the employment agreement constituted an agreement to negotiate to agree. (*Phillips* v. *Barton*, 207 Cal.App.2d 488 [24 Cal. Rptr. 527]; *Roberts* v. *Adams*, 164 Cal.App.2d 312 [330 P.2d 900].)

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 30, 1963.